**Richard E. MOORE and Mary Moore, Harold Offield, and Joyce N. Scott, Respondents–Appellants,**

v.

**Morris "Buzz" E. WEEKS and Cherri L. Weeks, Appellants–Respondents.**

**Nos. WD 59725, WD 59801.**

Missouri Court of Appeals, Western District.

Sept. 17, 2002.

Thomas N. Chapman, Chillicothe, for defendant Mary Jones.

Timothy H. Bosler, Chillicothe, for appellant/respondent Morris and Cherri Weeks.

Before ULRICH, P.J., BRECKENRIDGE and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

Richard and Mary Moore, Harold Offield, and Joyce Scott (Plaintiffs) are neighboring property owners in the Merle Jones Addition subdivision located in Chillicothe, Missouri. Plaintiffs sued Morris and Cherri Weeks, also property owners in the subdivision, to enforce restrictive covenants prohibiting the Weeks' use of their land for business purposes and to recover damages for nuisance. The trial court entered judgment for the Plaintiffs and awarded damages of $3650 each to Plaintiffs Offield and Scott. Both parties appeal. We affirm.

**Facts and Procedural History**

Viewing the facts in a light most favorable to the verdict, the following evidence was presented at trial. The Merl Jones Addition was established as a residential subdivision by property owner Merl Jones in 1962. As recorded, the subdivision plat included the following covenant restrictions on all lots: 1) no use for manufacturing or commercial enterprise for profit; and 2) no buildings except for single-family residential purposes. The plat also included a thirty-five-foot strip of land reserved for development by Livingston County as "Maple Street," which ran along the eastern boundary of the subdivision.

Plaintiff Harold Offield purchased Lot 4 in the subdivision, built a house and moved into it in 1967. As part of a bankruptcy proceeding, he sold the house to his daughter in 1986, who then sold it to Plaintiffs Richard and Mary Moore in 1995. At the time of the trial, Offield continued to live in the home and was in the process of buying it back from the Moores. Plaintiff Joyce Scott lived next door to Offield on Lot 5, which she purchased in 1995.

Respondent Morris Weeks purchased Lot 14 in the subdivision in 1972. He married Respondent Cherri Weeks in 1990, and they have resided in their home on Lot 14 since that time. The Weeks' home is located on Harvest Drive, across the street from the Scott and Offield homes.[1]

Sometime in the 1970's, Livingston County relinquished its development rights for Maple Street, and the thirty-five-foot strip of land reverted back to the subdivision and its developer, Merl Jones. In 1977, Jones sold part of the strip of land to the Weeks, who did not realize the land was part of the subdivision and subject to the covenants prohibiting business use and non-residential construction.

The Weeks purchased the former Maple Street land because it was adjacent to other property they owned outside the subdivision. The Weeks thereafter constructed two metal buildings, the first in 1977 and a second larger one in 1997. Both buildings sat partly on the land the Weeks owned outside the subdivision and partly on the land formerly designated as "Maple Street" inside the subdivision perimeter. The Weeks used the buildings in

---

**1.** Harvest Drive, formerly known as 36th Street, is the roadway on which the Offield property sits on a corner and diagonally across from the Weeks property. The Scott property is next door to the Offield property but around the corner from the Weeks property.

connection with a trenching and excavation business they owned and operated.

In 1998, Plaintiffs filed a Petition against the Weeks, asserting an equitable claim for breach of the restrictive covenants and two nuisance claims. In Count I of the Second Amended Petition, Plaintiffs claimed the Weeks' non-residential buildings and business operations violated the subdivision's restrictive covenants and diminished the value of Plaintiffs' land by $30,000 to $40,000 for each of the two lots at issue. Plaintiffs sought to enjoin the Weeks' business operation and to require removal of the two metal buildings.

The Count II nuisance claim asserted the Weeks improperly drained sewage affluent from their property into a ditch that ran along Harvest Drive. The raw sewage visibly collected in the ditch and smelled so bad that Plaintiffs were required to leave their windows closed, run air conditioning, and were denied the use and enjoyment of the outside areas of their properties. Plaintiffs further claimed their property values declined as a result of the sewage problem.

The Count III nuisance claim asserted that dust problems in the subdivision increased as a result of the Weeks' business use of their property. Harvest Drive was a gravel road the Weeks routinely traveled with a large dump truck and other equipment in connection with their excavation business. The movement of these heavy vehicles and machinery stirred up additional gravel dust that adversely affected Plaintiffs' enjoyment and use of their property, by forcing them to give up outdoor activities and keep their windows closed with the air conditioning running. Plaintiffs also claimed their property values declined due to exacerbation of the dust problems.

The Second Amended Petition sought abatement of the nuisances, damages, and attorney's fees. During pendency of the case, all of the subdivision properties were connected to the city sewer system and Harvest Drive was paved, thereby abating the odor and dust problems. At the time of trial, damages for past loss and enjoyment of Plaintiffs' properties were still at issue on the nuisance claims.

Trial was held on August 23 and 24, 2000. Upon evidence heard, the court entered judgment for the Plaintiffs, finding the Weeks liable for violation of the restrictive covenants and on both nuisance claims. The court did not require removal of the metal buildings but prohibited the Weeks from placing any additional commercial structures on the property or expanding the existing buildings beyond their current use. Plaintiffs Offield and Scott were each awarded $3,150 in damages on the sewer nuisance claim and $500 on the dust nuisance claim. No damages were awarded to the Moores, who owned Lot 4 but did not reside in the subdivision.

On appeal, the Weeks challenge the sufficiency of the evidence to support the judgment on the nuisance claims and assert the judgment for breach of restrictive covenants was against the weight of the evidence. The Weeks also contend the trial court abused its discretion in excluding the testimony of a witness whose identity was not disclosed in pretrial discovery. Plaintiffs cross-appeal, claiming the trial court's refusal to award full legal and equitable relief was against the weight of the evidence.

### Standard of Review

This judge-tried case will be reviewed under the standards set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). We must affirm the trial court's judgment unless it is not supported by substantial evidence, is against the weight of the evi-

dence, or erroneously declares or applies the law. *King v. City of Independence*, 64 S.W.3d 335, 338 (Mo.App. W.D.2002). Because of the trial court's superior ability to determine the credibility of witnesses, we must defer to the trial court's findings of fact. *Id.* We view the evidence and all reasonable inferences therefrom in the light most favorable to the trial court's judgment, while disregarding all contrary evidence and inferences. *Wildflower Cmty. Ass'n, Inc. v. Rinderknecht*, 25 S.W.3d 530, 534 (Mo.App. W.D.2000).

## Nuisance Claims

The Weeks challenge the sufficiency of the evidence to support the trial court's finding of liability and award of damages on the nuisance claims. The Weeks contend: 1) their actions were not "unreasonable" as compared to other factors that adversely affected the Plaintiffs' use and enjoyment of their properties; and 2) Plaintiffs were not entitled to damages because there was no proof that "but for" the Weeks' conduct, the dust and odors in the subdivision would have been significantly reduced.

## A. Applicable Law

 The tort of nuisance arises when a defendant's use of his or her property is so "unreasonable, unusual, or unnatural" that it substantially impairs the rights of another to enjoy his or her property. *Rosenfeld v. Thoele*, 28 S.W.3d 446, 450 (Mo. App. E.D.2000). Although the strict definition of "nuisance" refers to the defendant's unreasonable use of his property, the prime focus is on the defendant's unreasonable interference with the use and enjoyment of Plaintiffs' land. *Id.* There is no exact formula to determine the existence of a nuisance, but the relevant factual considerations include: the locality, character of the neighborhood, nature of

the use, extent and frequency of the injury, and the effect of the defendant's conduct upon the enjoyment of life, health, and property of those affected. *City of Fredericktown v. Osborn*, 429 S.W.2d 17, 22 (Mo.App. E.D.1968). Given the fact-specific nature of this inquiry, we must defer to the trial court's determination of reasonableness, absent a firm impression the judgment is wrong. *Wildflower*, 25 S.W.3d at 534.

 Upon proof of nuisance, a plaintiff can recover any diminished property value and compensatory damages "for any actual inconvenience and physical discomfort which materially affected the comfortable and healthful enjoyment ... of his home, as well as any actual injury to his health or property caused by the nuisance." *Byrom v. Little Blue Valley Sewer Dist.*, 16 S.W.3d 573, 576 (Mo.banc 2000) (citing *McCracken v. Swift & Co.*, 265 S.W. 91, 92 (Mo.1924)). In computing compensatory damages, there is no precise formula or bright line test to determine non-economic losses. *Alcorn v. Union Pacific R.R. Co.*, 50 S.W.3d 226, 250 (Mo.banc 2001). Each case must be considered on its own facts, with the ultimate test being whether the award fairly and reasonably compensates the plaintiff for the injuries sustained. *Id.*

 On appeal, a damages award is entitled to deference based on the fact finder's superior position to assess the credibility of damage witnesses and determine appropriate compensation. *Foster v. Catalina Indus., Inc.*, 55 S.W.3d 385, 392 (Mo.App. S.D.2001). We will not interfere with a damages award unless it is so excessive as to shock our conscience and convince us the trial court abused its discretion. *Id.*

## B. Sewer Nuisance Claim

The Weeks argue on appeal that their sewer drainage was not unusual because the entire subdivision was built on a septic sewer system that caused other property owners to experience seepage and resulting odor problems. Such inconveniences are common with septic systems; therefore, the Weeks assert plaintiffs should have anticipated the "nuisance" when they purchased the property or moved in. Plaintiff Offield admitted having sporadic problems with his own septic tank, and on one occasion in 1997 a Public Health Department investigator witnessed sewage from three or four homes in the subdivision draining into the ditch alongside Harvest Drive. Based on this evidence, the Weeks contend the trial court erred in concluding their use of the septic sewer system was unreasonable.

Our review of the record indicates Plaintiff Offield filed a complaint with the Public Health Department about the Weeks' sewage in July 1994. A public health investigator, Richard Smith, found that the Weeks' sewer affluent ran out of a drain on their property, surfaced on top of the ground, and pooled into a roadside ditch across from the Offield and Scott properties. Smith acknowledged that odors from the sewer drainage were likely to affect neighboring property owners. While he did not detect much odor on the day he investigated the complaint, Smith found the Weeks in violation of code requirements for failing to contain the sewage on their property. Smith discussed with Morris Weeks several options to correct the drainage problem. When the Weeks refused to correct the violation after ninety days, the complaint was turned over to the Prosecutor, but no further action was taken.

Three years later, in October 1997, Offield questioned the Public Health Department as to why the Weeks' sewer violation had not been addressed. Smith revisited the subdivision and determined the Weeks sewage affluent was still collecting in the ditch across from the Plaintiffs' property. He noted the problem of affluent seepage was common in the area and decided no further action was necessary because a proposed new city sewer system would resolve the problem, including the Weeks' violation. The city began replacing the subdivision's sewer system sometime in 1998.

Both Plaintiffs Offield and Scott testified the use and enjoyment of their property had been affected by the odor of the affluent they saw draining from the Weeks' property. Offield said the affluent smelled like "manure" and "immensely" affected his ability to do things outside his home. For more than twenty years (from shortly after the time Morris Weeks purchased Lot 14 in 1972, until the City installed a new sewer system in 1998), the odor from the Weeks' sewer drainage forced Offield to remain in his air conditioned home with the windows closed. Plaintiff Scott similarly testified that the odor prevented her from opening the windows in her home or sitting on her deck.

Viewed in a light most favorable to the judgment, the evidence was sufficient for the trial court to find the Weeks' drainage of raw sewage into a roadside ditch was an unreasonable use of their property that substantially impaired the use and enjoyment of Plaintiffs' property. While other properties may also have experienced sewage drainage problems, the trial court properly focused on the reasonableness of the Weeks' misconduct and whether it interfered with Plaintiffs' property rights. Smith testified there were no complaints about the sewer drainage of other property owners, and the Weeks were the only residents cited for a code violation. The

evidence clearly established that the Weeks refused to correct the improper drainage even after Smith gave them ninety days and discussed available options. Plaintiffs Offield and Scott testified that offensive odors consistently arose from the Weeks' drainage and limited the outdoor use of their properties. We defer to the trial court's finding of liability, as it is supported by the evidence.

■ The trial court awarded compensatory damages of $3,150 each to Plaintiffs Offield and Scott on the sewer nuisance claim. The Weeks contend the award was improper because there was no evidence that "but for" their sewer drainage violation, the odor problem would have been significantly reduced. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 860–63 (Mo.banc 1993) (discussing application of proximate cause test in tort cases).

Evidence of proximate cause was provided by Plaintiff Offield's testimony that the odor problems began when Morris Weeks moved into the subdivision and ended when the city installed the new sewer. Offield presented photographs of raw sewage draining from the Weeks' property into the ditch across the street from the Offield and Scott properties. The Weeks countered with testimony that other residents experienced episodes of seepage or sporadic drainage problems, but none were shown to be as persistent as the Weeks' permanent and illegal system of sewage drainage off their property. The evidence allowed a reasonable inference by the trial court that but for the Weeks' misconduct, the odor problem would have been substantially reduced.

■ After determining liability, the trial court was left to consider Plaintiffs' non-economic damages resulting from the lost use and enjoyment of their properties.[2] Plaintiff Offield endured the unpleasant odor of the Weeks' affluent drainage for more than twenty years before the City installed a new sewer system in 1998. Plaintiff Scott purchased her home in 1995 and could not enjoy her outdoor property for three years as a result of the odor problem. Scott's property was located behind the Offield property and further away from the drainage. The record on appeal does not indicate the amount of damages sought by either Plaintiff for this nuisance. The trial court exercised its discretion to award both Plaintiffs $3,150 despite differences in the degree to which they each suffered this inconvenience. The Weeks contend these factors indicate the damage award was improperly based on conjecture and not the evidence at trial.

In *McCracken v. Swift & Co.*, 265 S.W. at 93, the Missouri Supreme Court reviewed a nuisance case where $2,500 in damages was awarded for "the annoyance and disturbance of the comfortable enjoyment by the plaintiff and his family of his residence." The court noted that the "weight of the evidence and the amount of damages" were matters to be decided by the fact finder, which "had the opportunity of meeting the witnesses face to face, and of observing their demeanor on the witness stand." *Id.* (quoting *Dowd v. Westinghouse Air Brake Co.*, 132 Mo. 579, 34 S.W. 493 (1896)). In such cases where the damages are "not a mere matter of computation," *McCracken* held that the award:

> ... will not be interfered with, unless so excessive or so grossly inadequate as to be indicative of prejudice, passion, partiality, or corruption upon the part of the jury, or it appears to have been

---

2. While there was evidence of Plaintiffs' diminished property values, no recovery was permitted because the sewer nuisance was abated before trial and, thus, no actual loss was suffered.

based upon an oversight or mistake or upon a consideration of elements not within the scope of the action. The court should merely consider whether the verdict is fair and reasonable and in the exercise of sound discretion, under all the circumstances of the case, and it will be so presumed, unless the verdict is so excessive or so outrageous, with reference to those circumstances, as to demonstrate that the jury have acted against the rules of law or have suffered their passions, prejudices, or perverse disregard of justice to mislead them.

*Id.* at 93 (quoting 17 C.J. 1087).

There is sufficient evidence in the record for us to conclude that the trial court's award of damages was not grounded in speculation or conjecture, but rather on the Plaintiffs' testimony that the odor from the Weeks' sewage drainage was offensive and consistently precluded normal outdoor activity. Based on the applicable statute of limitations on these nuisance claims, the court could determine the value of the inconvenience suffered by the Plaintiffs for a ten-year period preceding the filing of their petition in 1998. *Campbell v. Anderson*, 866 S.W.2d 139, 142 (Mo.App. W.D.1993) (ten-year limitations period in § 516.010 applies to actions for a temporary, abatable nuisance). This extended annoyance could not be valued in a precise mathematical calculation; thus, it was a matter for the trial court's discretion upon evidence heard. The award of $3,150 was a fair and reasonable exercise of that discretion. Under the circumstances, the damages award is not excessive or outrageous and, therefore, will not be disturbed.

## C. Dust Nuisance Claim

The Weeks argue their business operations did not significantly contribute to dust problems in the subdivision because they traveled the gravel road only twice daily going to and from job cites with their trucks and heavy equipment. They also contend dust increased in 1996 when Harvest Drive was extended for development of a new subdivision, Providence Estates, just east of the Merle Jones Addition. Dust problems similarly increased as a result of construction to widen a highway near the Plaintiffs' homes. Challenging the sufficiency of the evidence on the dust nuisance claim, the Weeks assert their business use of the subdivision property was reasonable and did not substantially impair the Plaintiffs' use and enjoyment of their property as compared to other sources of the dust problem.

The record, however, contains substantial evidence that the Weeks' business operations were a major factor in the subdivision dust problem. Plaintiff Offield testified that traffic on Harvest Drive "increased considerab[ly]" after the Weeks' constructed their second metal building in 1997 and began using it for business purposes. He presented photographs of the Weeks' pick-up truck, dump truck, trailer, backhoe, and trencher traveling through the subdivision. The dust from the increased traffic on the gravel road "looked like a constant fog all the time." Offield was forced to chose between getting dusty and dirty outside or staying inside with the windows closed, either of which adversely affected his ability to enjoy his home and surrounding property.

Plaintiff Scott also observed Morris Weeks' trucks, trailers, and backhoes increase the traffic and dust problems on Harvest Drive. The movement of the heavy vehicles and commercial equipment left a dust so thick that Smith complained she could hardly see her backyard. The dust caused her to remain indoors with the windows closed. She could not sit on her

deck nor enjoy any outdoor area of her property.

While the Weeks' use of Harvest Road for business purposes clearly was not the only cause of the dust problem, there was sufficient evidence for the trial court to determine it was a cause that substantially impaired the Plaintiffs' use and enjoyment of their property. The unreasonableness of the Weeks' conduct was apparent because it violated the restrictive covenants against commercial enterprise and non-residential buildings. These violations led to the daily flow of heavy equipment on the subdivision's gravel roads. The court could reasonably conclude that but for the Weeks' business operations, the dust problem in the subdivision would have been substantially reduced.

■ The existence of other factors contributing to the dust problem did not preclude a finding of liability against the Weeks. The trial court considered these contributory factors in determining the extent of the damage caused by the Weeks' nuisance conduct. Plaintiffs Offield and Scott were awarded only $500 each for the lost use and enjoyment of their outdoor property on the dust nuisance claim. Such an award defies pure mathematical calculation and was a matter for the trial court's discretion. Finding no abuse of that discretion, we affirm.

### Breach of Restrictive Covenant Claim

■ The Weeks contend their affirmative defenses of laches, waiver/ abandonment, and estoppel should have barred judgment on the Count I claim for breach of the restrictive covenants. They argue the Plaintiffs waited too long to enforce the covenants prohibiting commercial enterprise and non-residential construction. They presented evidence that the covenants were not enforced against other property owners who operated home-based businesses within the subdivision. The Weeks assert the trial court's judgment was against the weight of the evidence which showed that Plaintiffs acquiesced in the covenant violations and thereby waived any right of enforcement.

The trial court agreed, in part, with the waiver defense and denied Plaintiff Offield's breach claim because he lived in the subdivision more than twenty years without formally objecting to the Weeks' commercial use of their property. The court declined to apply the affirmative defenses against the remaining Plaintiffs who had not resided in the subdivision for a lengthy period preceding the filing of their lawsuit. The court found:

> The testimony of the Plaintiffs clearly proved a violation by Defendants of the Merl Jones Addition Covenants and Restrictions prohibiting any commercial business for profit. Their first building was built over twenty years ago; the second one in the last three years. Since there were not objections to the first building for over twenty years, the Court believes that Plaintiff Offield "abandoned and waived his right to reply [sic] on the covenant by a conscious acquiescence in the persistent violation of the premises." While this acquiescence does not apply to Plaintiffs Scott and Moore, the Court believes that it would be too severe a remedy to require removal of the building; that it would be inequitable and unconscionable and the Court refuses to enter such an order. However, the Court does believe Defendant Weeks has been put on Notice not to build any future structures for commercial purpose nor to expand the offending buildings beyond the present usage. Any further building or expanded usage would clearly allow the Court to issue an Order removing the offending building or buildings.

The Weeks had the burden of proof on their affirmative defenses. *See Cent. Prod. Credit Ass'n v. Reed*, 805 S.W.2d 300, 301 (Mo.App. S.D.1991). Each of the three defenses is well established under Missouri law.

■■■■ "Laches is defined as the neglect for an unreasonable and unexplained length of time under circumstances permitting diligence to do what in law, should have been done. . . ." *In re Estate of Remmele*, 853 S.W.2d 476, 480 (Mo.App. W.D. 1993) (quoting *Metropolitan St. Louis Sewer Dist. v. Zykan*, 495 S.W.2d 643, 656–57 (Mo.1973)). The doctrine is not favored and is used primarily to prevent injustice. *Id.*

■■■■ The doctrine of equitable estoppel seeks to foreclose one from denying his own expressed or implied admissions—which can include conduct or lack of conduct—which have been relied upon by another in good faith. *Blake v. Irwin*, 913 S.W.2d 923, 934 (Mo.App. W.D.1996). Whether equitable estoppel applies rests largely on the facts and circumstances of the particular case. *Miskimen v. Kansas City Star Co.*, 684 S.W.2d 394, 400 (Mo. App. W.D.1984).

■■■■ Under an abandonment theory, a landowner may waive the right to enforce a restrictive covenant by consciously acquiescing to persistent violations. *Kling v. Taylor–Morley, Inc.*, 929 S.W.2d 816, 820 (Mo.App. E.D.1996).

The record reveals that Plaintiffs Scott and the Moores purchased homes in the subdivision in 1995. Until 1997, when the second metal building was constructed, these Plaintiffs were unaware the Weeks were operating a business in violation of the restrictive covenants. They filed suit to enforce the covenants approximately one year later in 1998. Under the circumstances, we cannot conclude that this was an unreasonable amount of time so as to indicate these Plaintiffs consciously acquiesced in the violation or did not act diligently and in good faith to preserve their covenant rights. Accordingly, the affirmative defenses did not bar the Plaintiffs' claim for equitable relief. The judgment on the breach of restrictive covenant claim is substantially supported by the record. Point denied.

### Exclusion of Witness

■■■■ The Weeks attempted to call Cindy Ireland, the County Assessor, as a witness at trial. Ireland was the author of a 1999 letter advising Plaintiff Offield that the County did not consider the thirty-five foot strip of land, originally reserved as Maple Street, to be part of the Merle Jones Addition. Plaintiffs objected to Ireland testifying at trial because the Weeks failed to identify her as a witness in response to discovery requests. The trial court sustained the objection. On appeal, the Weeks assert error in the exclusion of Ireland because the Plaintiffs were not surprised or prejudiced by her testimony concerning a "matter of public record."

■■■■ A trial court has broad discretion in choosing a remedy for a party's failure to disclose a witness during discovery. *Fairbanks v. Weitzman*, 13 S.W.3d 313, 327 (Mo.App. E.D.2000); Rule 61.01(b) [3]. We will reverse that ruling only upon a clear showing of abuse of discretion. *Fairbanks*, 13 S.W.3d at 327. Judi-

---

**3.** All rule citations are to the Missouri Rules of civil Procedure 2002, unless otherwise noted.

Rule 61.01(b) provides in relevant part:

If a party fails to answer interrogatories or file objections thereto within the time provided by law . . . the court may . . . make such orders in regard to the failure as are just. . . .

cial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 648 (Mo.banc 1997). If reasonable persons could differ about the propriety of the trial court's action, then it is not an abuse of discretion. *Id.*

In the context of Rule 61.01(b), an abuse of discretion can occur when the sanctions exceed that which is necessary to accomplish the purposes of discovery. *Fairbanks*, 13 S.W.3d at 327. The rules of discovery are designed to allow the litigants to determine the facts prior to trial, obtain access to information about the respective contentions, to preserve evidence, prevent concealment and unjust surprise, and formulate issues for trial. *Id.* The rules must be enforced to achieve these objectives.

Based on Plaintiffs' interrogatories, the Weeks were obligated to give a pretrial identification of Cindy Ireland if they intended to call her as a trial witness. The Weeks not only failed to list Ireland in their discovery responses, but they also failed to offer any reasonable explanation for this omission when they attempted to call her at trial. In response to Plaintiffs' objection at trial, the Weeks responded only that Ireland's testimony would be limited to the contents of a letter that the County Assessor's office sent to Plaintiff Offield in 1999. They argued the letter was a matter of public record, which should not surprise or prejudice Plaintiffs. However, the letter was not in evidence and had not been produced during discovery. Regardless of whether Plaintiff Offield had prior knowledge of the letter, the problem here is that none of the Plaintiffs had reasonable notice that the Weeks in-tended to raise the letter's contents as an issue at trial.

The exclusion of Ireland's testimony was a remedy properly tailored to accomplish the objectives of the discovery rules. The Weeks did not provide Plaintiffs with a reasonable opportunity to prepare for the issues the testimony would have raised at trial. Exclusion of testimony is an available sanction where a party has failed to identify a witness in response to interrogatories. *Garrison v. Garrison*, 640 S.W.2d 179, 180 (Mo.App. E.D.1982). Under the circumstances, the trial court did not abuse its discretion in restricting the use of a witness whose identity and testimonial subject was not disclosed in response to pretrial discovery requests.

## Cross–Appeal on Relief Award

Plaintiffs contend the trial court's refusal to award the full range of equitable and legal relief possible was against the weight of the evidence. Despite finding liability on all three counts, the court did not enjoin the Weeks from operating their business or require removal of the commercial buildings. An appraiser testified that the business operations diminished Plaintiffs' property values by $30,000 to $40,000, but the court did not award damages for that loss, nor for Plaintiff Offield's increased utility costs as a result of the sewer and dust problems. The court also declined to award Plaintiffs' attorney's fees as the prevailing parties.

This Court will affirm the relief awarded in a bench trial unless there is no substantial evidence to support it, it is against the weight of the evidence, or the trial court erroneously declared or applied the law. *Morgan Publ'ns, Inc. v. Squire Publishers Inc.*, 26 S.W.3d 164, 172 (Mo. App. W.D.2000). The trial court's decision is entitled to deference on appeal and will not be disturbed unless it is shown that the

damages award is clearly wrong, grossly inadequate, or excessive. *Montrose Sav. Bank v. Landers*, 675 S.W.2d 668, 672 (Mo.App. W.D.1984); *Parr v. Parr*, 16 S.W.3d 332, 336 (Mo.banc 2000).

 The trial court's written findings indicate its effort to balance the equities in determining whether the relief requested by Plaintiffs would unduly burden the Weeks. On the Count I equity claim, the court found the Weeks violated the restrictive covenants but refused to order removal of the metal buildings or business operations because such a remedy was "inequitable ... unconscionable" and "too severe." The court put the Weeks on notice not to build any additional commercial structures or expand the current usage of the metal buildings. This disposition was fair and reasonable in light of the Weeks' contention they were unaware the restrictive covenants applied to the thirty-five-foot strip of land on which the metal buildings were partially constructed.

 Plaintiffs' Second Amended Petition sought only equitable relief for the breach of restrictive covenants. By election of this remedy, Plaintiffs waived any damages claim for their diminished property values resulting from the breach. *Ellsworth Breihan Bldg. Co. v. Teha Inc.*, 48 S.W.3d 80, 82 (Mo.App. E.D.2001). Plaintiffs sought damages in Counts II and III for property value losses due to the sewer and dust nuisances. These claims were properly denied because both nuisance problems were eliminated by the time of trial. Plaintiffs suffered no actual loss because they did not sell their properties at reduced value before the nuisance problems ended.

 The trial court awarded Plaintiff Offield damages of $3,150 each on the sewer nuisance and $500 each on the dust nuisance claim. Offield contends he was entitled to damages of at least $19,440 because for eighteen years his utility bills were increased by at least $90 monthly as a result of odor and dust problems that forced him to remain in his air-conditioned home. However, the applicable ten-year statute of limitations precluded the court from awarding the long-term relief requested on the nuisance claims. § 516.010. The court was also entitled to assess credibility on the damages testimony and could believe or disbelieve Offield's testimony in whole or in part. Given the lack of a precise method to measure the effect of the nuisance problems on the utility bills, we cannot conclude Offield's total award of $3,650 was grossly inadequate or against the weight of the evidence.

 Missouri courts generally do not permit recovery of attorney's fees, unless provided for by statute or contract, or "when needed to balance benefits in a court of equity." *Killion v. Bank Midwest, N.A.*, 987 S.W.2d 801, 809 (Mo.App. W.D.1998). We follow the "American Rule" which provides that litigants should bear the expense of their own attorney's fees. *Fisher v. Fisher*, 874 S.W.2d 543, 546 (Mo.App. W.D.1994).

 In this case, no statute or contract allows Plaintiffs to collect attorney's fees as prevailing parties. Likewise, Plaintiffs cannot recover attorney's fees under the balance of benefits theory either, as that exception applies only in equitable proceedings in "those rare situations where a party's pursuit of litigation enures to the benefit of the other parties, such as obtaining clarification of the terms of a trust." *Consol. Pub. Water Supply Dist. No. C–1 v. Kreuter*, 929 S.W.2d 314, 317 (Mo.App. E.D.1996). This litigation was brought to benefit Plaintiffs and does not meet the equitable benefits exception. Plaintiffs have failed to cite authority for any other theory under which the trial

court was required to award attorneys' fees. We discern no abuse of discretion in the court's application of the American rule, ordering the parties to pay their own litigation expenses.

The trial court's determination of equitable and legal relief is supported by the record and will not be disturbed on appeal. The judgment is affirmed.

All concur.