Anthony Rex Gabbert, Judge
INTRODUCTION
Appellants J. Todd Frye, David L. Ditzler, William J. Hembury, Thomas J. Fry, Mark S. Evangelisti, and Shawn Williams (collectively "Appellants") appeal from a judgment of the Sullivan County Circuit Court finding that Respondent Monarch Title of Northern Missouri ("Monarch") was not negligent in its performance of duties related to a land sale. Appellants claim that Monarch negligently prepared a map and legal description of the property being purchased by Appellants, and that the map differed in key respects from the legal description, misleading Appellants to believe that the legal description of the property conveyed more acreage than it actually did. Appellants claim that the trial court erred in entering judgment in favor of Monarch on Appellant's negligence claim because this ruling was against the weight of the evidence and erroneously applied the law. We affirm.
BACKGROUND
The facts, in the light most favorable to the judgment, are as follows. Wendell and Paula Havens owned roughly 400 acres of *696 real property spread across sections 23 and 26 in Sullivan County, Missouri. In the early 2000's, the Havens decided to set up a hunting lease for their property. They leased the property to Roger Hubler who then offered to sublease the property to another hunter, Thomas Frye. Frye accepted the sublease and brought along several other friends to hunt the Havens property. Thomas Frye, Todd Frye, William Hembury, David Ditzler, and Shane Pedro renewed the lease for several years, hunting deer in the fall and turkeys in the spring. The Havens purchased an additional 80 acres of land in 2007 which was also leased to the hunters.
Beginning in 2009, Wendell Havens began discussing selling some of his land. He first sold the 80 acres purchased in 2007 to Appellant William Hembury. Monarch handled the title work, and an attorney prepared the real estate contract. After this sale, the Havens still wanted to sell 120 acres of their original 400 acres, specifically 120 acres situated in Section 23. In 2011, Wendell Havens approached Appellants Fry and Ditzler about purchasing a portion of the original 400 acres. They responded that they would let him know if they were interested in purchasing the land when they returned to hunt later that year.
Frye and Ditzler presented the opportunity to the other hunters. Shane Pedro was not interested in purchasing the land, so the hunters, in an effort to spread costs, added Mark Evangelisti and Shawn Williams to their group. After they informed the Havens that they were interested in purchasing the land, the parties began discussing a price. While the Havens felt the initial offer was insufficient, the Appellants were concerned that accessing the 120 acres would prove difficult. The hunters then offered to buy 200 acres instead. Ditzler and Wendell Havens exchanged phone calls negotiating the sale of the land, though the parties disagreed throughout this case as to what was said and agreed to. Nonetheless, Ditzler eventually turned to Hembury to finalize the sale as Hembury had already completed one land sale with the Havens.
Hembury once again turned to Monarch and the same attorney to complete the sale. Monarch was instructed to prepare a legal description of the property being purchased. As instructed by Hembury, a Monarch employee, Susan Moxley, gathered information from Wendell Havens for Monarch to use in preparing the legal description. Havens informed Moxley that they were keeping 200 acres in Section 23. For her boss's information she obtained a plat map showing ownership of various real estate in this area and drew a line around the portion of Section 23 which was owned by Havens, which contained approximately 321 acres. She then drew a line across the land Havens owned and put a notation by the southern portion which read, "keeping 200 acres."[1] Based on this, Monarch prepared a legal description of the north 120 acres to be included in the sale. The attorney then used the legal description prepared by Monarch to draft the real estate contract and prepare an easement across the 200 acres the Havens were keeping to provide Appellants access to the land they were purchasing. Hembury requested Monarch to provide a map of the land so they could "figure out the easement issue." Moxley sent him a copy of the plat map with the land owned by Havens in Section 23 outlined and the line across the land with the notation "keeping 200 acres." The closing of the real estate transaction occurred in August of 2011. At *697 no time prior to closing did Appellants seek a professional survey of the land they were purchasing.
During the subsequent fall hunting season, Wendell Havens approached the Appellants, who were hunting on the land, and informed them that they would henceforth need to relocate their camp to the land they had purchased. He further requested that they conduct a survey so that he could run a fence across the new property boundary. A professional survey based on the legal description was conducted which established a property line showing the Appellants purchased 120 acres rather than 200 acres. At Appellants' request, Monarch prepared a corrective deed with a legal description for the 200 acres Appellants believed they had purchased. The Havens refused to sign the corrective deed, and the Appellants commenced this litigation.
A bench trial was conducted in August and September of 2017, at which the above evidence was adduced, and after the close of Appellants' evidence, Monarch's Motion for Judgment was sustained.[2] Appellants filed a Motion for New Trial as to their negligence claim against Monarch. The circuit court entered its final judgment as to the counts against Monarch on October 31, 2017.
The October judgment set forth findings of fact and conclusions of law in support of the trial court's ruling. Of note were the court's factual findings that Appellants knew that Wendell Havens was providing information to Susan Moxley for Monarch's use in preparing the legal description; Wendell Havens told Monarch that he was only selling 120 acres and the legal description accurately described the property being sold per his instructions; none of the Appellants told Monarch they intended to purchase 200 acres; the legal description prepared by Monarch was identical to the descriptions used in the sales contract and the warranty deed; and the attorney retained by Appellants reviewed the legal description from Monarch which she used to prepare the real estate contract. The court concluded that Monarch did not breach any duty owed the Appellants and was therefore not negligent.
DISCUSSION
In their sole point on appeal, Appellants' contend that the trial court erred in entering judgment on Count IV of Appellants' petition in favor of Monarch on Appellant's negligence claim because this ruling was against the weight of the evidence and erroneously applied the law. Appellants argue on appeal that Monarch was negligent in providing the plat map with notations that differed from the legal description of the property being conveyed, and that they relied on this misleading map as they proceeded with the transaction rather than rely on the legal description which, as laypeople, they were unable to decipher. They argue that the marks on the map misled them into thinking they were purchasing more land than the legal description conveyed and that this reliance was foreseeable.
"In a court-tried case, a motion for directed verdict submits the issue for decision on the merits and is considered to be a motion for judgment pursuant to Rule 73.01. Accordingly, this court reviews not for submissibility, but under Murphy v. Carron , 536 S.W.2d 30 (Mo. banc 1976)."
*698 Short v. Southern Union Co., 372 S.W.3d 520, 529 (Mo. App. 2012) (quotation marks and citations omitted). "As in any court-tried case, the judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." City of Kansas City v. Garnett , 482 S.W.3d 829, 831 (Mo. App. 2016) (citing Murphy , 536 S.W.2d at 32 ). "It is the appellant's burden on appeal to demonstrate that the trial court's judgment was incorrect on any basis supported by the record and the applicable law." State ex rel. Nixon v. Koonce , 173 S.W.3d 277, 286 (Mo. App. 2005) (citation omitted). "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." Murphy , 536 S.W.2d at 32.
[A] claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment. The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong. When reviewing the record in an against-the-weight-of-the-evidence challenge, this Court defers to the circuit court's findings of fact when the factual issues are contested and when the facts as found by the circuit court depend on credibility determinations. A circuit court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment. When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence. This Court rarely has reversed a trial judgment as against the weight of the evidence....
S.S.S. v. C.V.S., 529 S.W.3d 811, 815-16 (Mo. banc 2017) (citations and quotations omitted).
We first note that Appellants solely argue on appeal that the trial court erred in entering judgment against Appellants on Count IV of petition and limit the argument to their theory that the plat map provided to Appellants by Monarch was misleading and that Monarch breached their duty to Appellants by providing the misleading map. However, in Count IV of the Appellants' petition, all of the allegations are that Monarch was negligent in preparing the legal description in this case and by only obtaining title insurance on 120 acres rather than the 200 acres Appellant believed they were purchasing. Appellants' petition never mentions the plat map or makes any allegations that Monarch was negligent in providing the plat map to Appellants. In fact there is not a single mention of the plat map anywhere in the Appellants petition. In Appellants opening statement at trial there was no mention of the plat map. In Appellants response to the motion for judgment at the close of the plaintiff's evidence, they argued for the first time that Monarch was negligent in sending the plat map with the line on it to Mr. Hembury. At that point Monarch objected that the argument that they breached a duty by sending the plat map to Hembury was outside the scope of the pleadings and the trial court sustained that objection. (Tr. p. 999-1000).
"For a claim based upon general negligence to be submissible and/or to *699 prevail, it must be shown that the party against whom such a claim is brought owed a duty to the claimant, that the responsible party breached his duty by act or omission and that as a result of that breached duty, injury or damage resulted." American Mortgage Inv. Co. v. Hardin-Stockton Corp., 671 S.W.2d 283, 292-93 (Mo. App. 1984). "Whether a duty exists is purely a question of law." Sun Aviation, Inc. v. L-3 Comms. Avionics Systems, Inc., 533 S.W.3d 720, 727 (Mo. banc 2017) (citation omitted). However, whether a duty exists is determined on a case by case basis. Id. The court must first determine whether the source of the duty alleged is a contractual duty or a duty arising in tort. American Mortgage, 671 S.W.2d at 293. The claims against Monarch that are the subject of this appeal are found in Count IV of the Appellants' petition below which is a claim for negligence, and therefore, any duty owed by Monarch to Appellants would be a duty arising in tort. "Factual circumstances surrounding the relative status of the parties and other factual circumstances peculiar to such particular case dictates the acts/omissions which may be required under the standard of reasonable care." Id.
Because the allegation that Monarch breached its duty to Appellants by providing them the allegedly inaccurate plat map was not presented to or decided by the trial court, this court cannot review this claim on appeal. LeBlanc v. Patton, 247 S.W.3d 573, 576 (Mo. App. 2008). "A party on appeal generally must stand or fall by the theory on which he tried and submitted his case in the court below." Slavens v. Slavens, 379 S.W.3d 900, 904 (Mo. App. 2012) (citations omitted).
Even if this point had been preserved for appeal, Appellants arguments are unavailing. The court found that Appellants knew that Monarch would receive instructions from the Havens to use in drafting the legal description. Indeed, in their own brief before this Court, Appellants state that they told Monarch that the Havens would provide the necessary information for preparation of the legal description. The trial court further found that the legal description Monarch prepared was accurate as to the instructions received from the Havens. At the same time, none of the Appellants communicated to Monarch that they intended to purchase 200 acres. Having found that Monarch performed its duty exactly as instructed by its clients, the Appellants, the court was correct in finding that there was no breach of duty and in turn no negligence on the part of Monarch.
The trial court's judgment is affirmed.
All concur.

The land Havens owned in Section 26 was directly south of the land he owned in Section 23 and the two Sections are separated by a road in this location.

Additional claims against different parties remained and the trial continued as to those claims.