

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

GEORGE R. WAGNER, ET AL.,      )
                                        )
          Appellants,         )
                                          )
v.                                    )          WD84214
                                          )
BARRY L. NOLAN,             )          Order filed:  April 19, 2022
                                          )
          Respondent.        )

**APPEAL FROM THE CIRCUIT COURT OF
JOHNSON COUNTY, MISSOURI
THE HONORABLE WILLIAM B. COLLINS, JUDGE**

Division Four:  Cynthia L. Martin, Chief Judge,
Thomas N. Chapman, Judge and W. Douglas Thomson, Judge

George and Lila Wagner (collectively, the "Wagners") appeal from the trial court's judgment granting Barry Nolan's ("Nolan") motion for relief from a prior judgment which enjoined him from operating his tow business from his residential property pursuant to his subdivision's restrictive covenants. On appeal, the Wagners claim the trial court's finding that a majority of the tracts in the subdivision filed an instrument terminating the restrictive covenants was against the weight of the evidence in that the termination instrument was not signed by a majority of the lot owners. We reverse.

## Factual and Procedural History

The Wagners and Nolan reside in Peaceful Valley Subdivision (the "Subdivision") in Kingsville, Missouri, which was created for single-family residential development. The Wagners are the owners of Lot 11 and Nolan is the owner of Lot 7 in the Subdivision. The lots of the Subdivision are subject to the "Restrictive Covenants on Peaceful Valley, a platted subdivision in Johnson County, Missouri" (the "Restrictive Covenants") executed on February 15, 2000. The Restrictive Covenants, which are executed by the developer of the Subdivision, reference that the exact legal description is attached and incorporated and that the plat of the Subdivision is duly recorded. The Restrictive Covenants enforce the Subdivision's residential scheme and road maintenance agreement. The Restrictive Covenants state they apply to all of the tracts of land in the Subdivision. The legal description provides it is also known as "***Lots 1 through 14***, Peaceful Valley, a subdivision in Johnson County, Missouri.[1] (Emphasis added).

The Restrictive Covenants provide that they "run with the land and shall be binding upon all properties and all persons claiming under them for a period of ten (10) years . . . at which time [they] shall be automatically extended for successive periods of ten (10) years unless ***the then owners of a majority of the tracts in the said subdivision*** shall, before the expiration of said original term, or any extension

---

[1]Notably, the Restrictive Covenant's exhibit containing the legal description was not included with the copy of the Restrictive Covenant submitted on appeal. However, the same legal description was included with the Termination Instrument on appeal and Nelson conceded at oral argument that it is the same legal description as attached to the Restrictive Covenants.

thereof, by an instrument executed, acknowledged and recorded . . . change or modify the same in whole or in part[.]"  (Emphasis added).

In 2008, the developers replatted Lot 2 into four, separate lots, known as Lot 2, 2A, 2B, and 2C.  The replat of Lot 2 was recorded in Cass County.  At that time, nothing in the Restrictive Covenants addressed the effects of a lot replat.  No modification was made to the Restrictive Covenants thereafter to address the effect a replat would have on the voting rights.  Nor was any document created which evidenced that, as a result of the Lot 2 replat, there were now 17 rather than 14 lots subject to the Restrictive Covenants.

In 2016, the Wagners filed a petition for injunctive relief against Nolan in which they claimed Nolan was in violation of the Restrictive Covenants by operating a tow service from his residence and routinely keeping unlicensed vehicles on his property.  After a hearing, the trial court entered a judgment granting injunctive relief ("Injunction Judgment") finding Nolan's conduct in violation of the Restrictive Covenants.  The trial court permanently enjoined Nolan from any such further conduct.  In March 2018, the Injunction Judgment was affirmed on appeal by this Court, at *Wagner v. Nolan*, 545 S.W.3d 373 (Mo. App. W.D. 2018).

In March 2019, Nolan filed a motion for relief under Rule 74.06(b)[2] from the Injunction Judgment.  In his motion, Nolan claimed the Restrictive Covenants were applicable for ten years after which time the covenant automatically extended for

---

[2] The use of Rule 74.06 in this manner is rather novel.  A trial court is able to modify or terminate its injunction simply by virtue of its inherent power over such an order.  *School Dist. of Kansas City, Mo. v. Mo. Bd. of Fund Commissioners*, 384 S.W.3d 238, 262 (Mo. App. W.D. 2012).

successive periods of ten years unless the owners of a majority of the tracts in the Subdivision execute an instrument changing or modifying the restrictions. Nolan asserted that on July 31, 2018, the owners of a majority of tracts in the Subdivision filed a "Termination and Release of Restrictive Covenant," whereby said property owners terminated, released and discharged the restrictive covenants in their entirety ("Termination Instrument"). Nolan asserted that 9 of the 17 lot owners voted to terminate the Restrictive Covenants, by executing the Termination Agreement. In determining that there were 17 lot owners entitled to vote, Nolan added to the 14 original lots the 3 additional lots created by the Lot 2 subplat. Notably, all four of the lots created by the Lot 2 subplat voted to terminate the Restrictive Covenants.

Nolan argued that the Injunction Judgment should be set aside as it is no longer equitable for it to remain in force as it permanently enjoined him from activities that were no longer in violation of the Restrictive Covenants.[3] After a hearing, the trial court entered its judgment relieving Nolan from the Injunction Judgment because it "is no longer equitable as a result of the termination of the covenant by a majority of tract owners." The trial court ordered that Nolan is permanently allowed to conduct a tow service from his property, and to keep any unlicensed motor vehicles on his property.

The Wagners appeal.

---

[3]At oral argument, Nelson conceded that the only change that had occurred since the issuance of the injunction, which formed the basis for his motion for relief under Rule 74.06(b), was the filing of the Termination Instrument.

4

**Standard of Review**

"This judge-tried case will be reviewed under the standards set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *Moore v. Weeks*, 85 S.W.3d 709, 715 (Mo. App. W.D. 2002). "We must affirm the trial court's judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Id.* at 715-16. "Because of the trial court's superior ability to determine the credibility of witnesses, we must defer to the trial court's findings of fact." *Id.* at 716. "We view the evidence and all reasonable inferences therefrom in the light most favorable to the trial court's judgment, while disregarding all contrary evidence and inferences." *Id.* "'It is the appellant's burden on appeal to demonstrate that the trial court's judgment was incorrect on any basis supported by the record and the applicable law.'" *Frye v. Monarch Title of N. Mo.*, 565 S.W.3d 693, 698 (Mo. App. W.D. 2018) (citation omitted).

**Analysis**

On appeal, the Wagners claim the trial court erred in finding the Restrictive Covenants had been terminated because the trial court's finding that a majority of the tract owners terminated the Restrictive Covenant was against the weight of the evidence in that the Termination Instrument was not signed by a majority of the lot owners of the Subdivision. In particular, the Wagners claim (a) only six owners of the fourteen lots in the Subdivision signed the Termination Instrument, and (b) the signature for Lot 2 is not properly acknowledged in the Termination Instrument.

"'A restrictive covenant is a private contractual obligation generally governed by the same rules of construction applicable to any covenant or contract.'" *Woodglen Ests. Ass'n v. Dulaney*, 359 S.W.3d 508, 513 (Mo. App. W.D. 2012) (citation omitted). "'When interpreting [restrictive] covenants, courts should give effect to the intent of the parties as expressed in the plain language of the covenant[.]'" *Id.* (citation omitted).

Here, the plain language of the Restrictive Covenants, including the attached and incorporated legal description, clearly define the 14 tracts which make up the Subdivision, and which may, in turn, vote on changes to the Restrictive Covenants. The legal description of the Subdivision indicates that there are *14* lots in the Subdivision, stating it is "also known as **Lots 1 through 14**, Peaceful Valley, a subdivision in Johnson County, Missouri." Moreover, Paragraph 10 of the Restrictive Covenants directs how the covenants may be modified, stating in pertinent part:

> These restrictions, reservations and covenants shall run with the land and shall be binding upon all properties and all persons claiming under them for a period of ten (10) years from the date this instrument if filed for record in the Recorder's Office for Johnson County, Missouri, at which time said covenants shall be automatically extended for successive periods of ten (10) years **unless the then owners of a majority of the tracts** in the said subdivision shall, before the expiration of said original term, or any extension thereof, by an instrument executed, acknowledged and recorded in the Office of the Recorder of Deeds, Johnson County. Missouri, change or modify the same in whole or in part, EXCEPT until 75% of the lots have been sold developer shall have the right to grant exceptions or to modify these restrictions.

(Emphasis added).

6

Paragraph 10 of the Restrictive Covenants is not ambiguous. According to its plain language, for the Termination Instrument to be effective, it must be executed by the owners of a majority of the tracts within the Subdivision. This means the owners of a majority of the *14 tracts*, as defined in the Restrictive Covenants by way of the legal description, were required to terminate the Restrictive Covenants. [4]

The trial court found:

> On or about July 31, 2018, **the owners of a majority of the tracts** in the Peaceful Valley subdivision filed a "Termination and Release of Restrictive Covenant," terminating releasing and discharging the Restrictive Covenant in its entirety.

(Emphasis added). The evidence presented to the trial court does not support its finding that "the owners of a majority of tracts" in the Subdivision executed the Termination Instrument. The trial court found that a majority terminated the Restrictive Covenants by utilizing the incorrect methodology, as asserted by the Nolans, which granted a vote to each originally platted lot *and* each lot created by the Lot 2 replat, rendering a total of 17 lots.

It is undisputed that the Subdivision as defined in the legal description consists of 14 lots. It is also undisputed that there has never been a replat of the entire Subdivision to change the number of lots from 14 to 17, and neither have the Restrictive Covenants been amended to reflect a change from 14 to 17 lots. Although

---

[4]The parties and the trial court utilize the words "tract" and "lot" synonymously, most significantly when stating that a majority of the *lot* owners signed the Termination Instrument when in fact Paragraph 10 of the covenant refers to "owners of a majority of the *tracts*." We observe the same, synonymous use in Section 10 itself, which states the covenant may not be changed or modified without the agreement of "owners of a majority of the *tracts*," yet later states the developer has certain rights "until 75% of the *lots* are sold." Because both parties and Paragraph 10 use these words synonymously, we do the same. We note these words are not always used synonymously, however. *See generally Leiser v. City of Wildwood*, 59 S.W.3d 597, 603-604 (Mo. App. E.D. 2001).

the developer executed and recorded a replat dividing Lot 2 into four separate lots, the replat itself did not effectuate a modification of the Restrictive Covenants. And, the Restrictive Covenants contain no provision which addresses the effects of a replat of lots. Thus, the Restrictive Covenants, as unambiguously written, recognize only 14 lots.

To be effective, the Termination Instrument must be executed by the owners of a majority of the **14 tracts.** Here, at the time of the Termination Instrument vote, each of the lots created by the Lot 2 replat were considered a lot and allowed to cast a vote. This created a majority of 9 of the purported 17 lots, with each of the lots created by the Lot 2 replat voting to terminate the Restrictive Covenants. Had Lot 2 received only its one vote as should have occurred, only 6 of the 14 lots would have voted to terminate the Restrictive Covenants, thus failing the majority vote required to amend (or revoke) the Restrictive Covenants.

Moreover, attached to the Termination Instrument is the same legal description attached to the Restrictive Covenants, which expressly states the Subdivision consists of 14 lots. Likewise, the language of the Termination Instrument repeatedly references the Subdivision as consisting of 14 lots in its recitals. The Termination Instrument provides:

> WHEREAS, the undersigned executing Owners hold title in fee simple the majority of the lots in the real property legally described as Exhibit "A", attached hereto known as Lots 1 through 14 Peaceful Valley and made a part of hereof (the "Property"); and
>
> . . . .

WHEREAS, the Owners of the undersigned properties representing ____ lots within the subdivision and more than fifty percent (50%) of the 14 lot owners and 14 platted lots, constituting the subdivision have agreed that the Restrictive Covenant shall be changed to terminate the Restrictive Covenant, so it is terminated, released and discharged in its entirety and shall be of no further force and effect.

Here, the Termination Instrument was not signed by the owners of a majority of the 14 tracts, which would be the owners of eight tracts. Instead, it was signed by the owners of only six tracts, which includes the collective ownership of Lot 2 after its replat.[5] Accordingly, the trial court's ruling is against the weight of the evidence.[6]

Point granted.

## Conclusion

We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.

---

[5]Here, Lots 2, 2A, 2B, and 2C, constituting the entire Lot 2 Replat, are owned by the same entity. Accordingly, *how* the single vote of the original Lot 2 would be determined if the replat was owned by more than one entity is saved for another day.

[6]Our analysis finding the Termination Instrument invalid renders the Wagners' claim regarding the signatures on the Termination Instrument moot.