Jack MASSEY et al., Respondents,

v.

Jimmy W. LONG et al., Appellants.

No. WD 31371.

Missouri Court of Appeals, Western District.

Nov. 3, 1980.

**548**

F. A. White, Jr., North Kansas City, for appellants.

Vincent F. Igoe, Jr., Liberty, for respondents.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Jack Massey and his wife (Masseys) filed suit against Jimmy Long and his wife (Longs) for abatement of a private nuisance and damages. According to the Masseys' petition, albeit substantially paraphrased, noise from the operation of "six air–conditioning units" on Longs' property (a six unit apartment complex) constituted a private nuisance and as a result thereof Masseys sustained certain damages. Following a bench trial, the trial court found that operation of the "six air–conditioning units" constituted a private nuisance and judgment was entered in favor of Masseys and against Longs in the sum of $2,500.00 as damages, and for costs, and Longs were enjoined from operating the air conditioning units "between the hours of 10:00 o'clock P.M. in the afternoon and 7 A.M. in the forenoon." Longs appealed from the adverse judgment rendered against them.

Longs contend on appeal (1) that there was no "substantial proof" that operation of the air conditioning units constituted a "nuisance", (2) that there was no evidence to support the damages awarded to Masseys, and (3) that Longs' tenants, who were not joined as defendants, were "indispensable parties".

A synoptic view of the evidence is in order before undertaking to resolve the points of error raised by Longs. The Masseys own and occupy a residential property in North Kansas City, Missouri. The Longs

constructed a six unit apartment complex on property owned by them immediately north of the Masseys. Six air conditioning units (compressors) to serve the apartments were placed on the south side of the apartment complex. Their location is such that they are only seven feet from the north side of the Masseys' residence. The bedroom occupied by the Masseys is on the north side of the ground floor of their residence. When the Masseys first became aware of the proposed location of the air conditioning units they lodged repeated complaints with Longs to no avail. The Longs occupy one of the apartments in the six unit apartment complex, and the other five apartments are occupied by tenants.

Following completion of the apartment complex, and more particularly since the summer of 1977, the six air conditioning units, while in operation during nighttime hours, emitted an audible noise which disrupted Masseys' sleep in their bedroom and forced them to resort to sleeping on cots in their dining and living rooms to obtain sleep and rest. The Masseys were fresh–air addicts and slept with their bedroom windows open. The windows in the Masseys' bedroom are parallel to the air–conditioner compressors located some seven feet away. According to the Longs there was no "convenient" or "economical" method for correcting the noise factor associated with operation of the air conditioning units. The Masseys testified that the noise emitted by the air conditioning units frayed their nerves, disturbed in general their normal use and enjoyment of their home, and destroyed a quiet environment sought to be maintained in their home by reason of a preexisting heart condition suffered by Mr. Massey. The Masseys also testified that noise from the air conditioning units depreciated the value of their property in the amount of fifteen thousand dollars.

The record is silent as to the nature of the landlord–tenant relationship between the Longs and their tenants, e. g. whether the tenants were occupying the apartments on a month–to–month basis or for fixed terms under written leases, or whether Longs were contractually obligated to pro-vide air conditioning for the benefit and enjoyment of their tenants. Insofar as control over the operation of the six air conditioning units is concerned, the Longs affirmatively pleaded in their answer to Masseys' petition that the tenants had no control over the six air–conditioner compressors located on the south side of the apartment complex.

Appellate review of this court tried case is circumscribed by Rule 73.01 as explicated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976): "the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law."

■ Attention now focuses on Longs' first point on appeal–lack of "substantial proof" that operation of the air conditioning units constituted a "nuisance". Except for certain acts, businesses, or structures which are nuisances per se, there is no hard, exact rule or formula for determining the existence or nonexistence of a nuisance. *Crutcher v. Taystee Bread Co.*, 174 S.W.2d 801, 805 (Mo.1943); *City of Fredericktown v. Osborn*, 429 S.W.2d 17, 22 (Mo.App.1968); *Schott v. Appleton Brewery Co.*, 205 S.W.2d 917, 920 (Mo.App.1947). When faced with determining the existence or nonexistence of a nuisance other than a nuisance per se one must resort to certain well established equitable principles, of which those compiled and articulated in *Kelly v. Boys' Club of St. Louis, Inc.*, 588 S.W.2d 254, 256 (Mo. App.1979), are representative: " 'At common law, a "nuisance" is a wrong arising from an unreasonable or unlawful use of property to the discomfort, annoyance, inconvenience or damage of another, and usually comprehends continuous or recurrent acts.' *Meinecke v. Stallsworth*, 483 S.W.2d 633 (Mo.App.1972) [6]; 'It is the law that one may not make such an unreasonable, unusual or unnatural use of his property that it substantially impairs the right of another to peacefully enjoy his property.'

*City of Fredericktown v. Osborn*, 429 S.W.2d 17 (Mo.App.1968) [2–7]. In every case the question is one of reasonableness of use and that determination depends upon the facts and circumstances of each case. *Clinic and Hospital v. McConnell*, 241 Mo. App. 223, 236 S.W.2d 384 (1951) [8–11]." Factors to be taken into consideration for determining the existence or nonexistence of nuisances other than nuisances per se are found in *Clinic & Hospital v. McConnell*, 241 Mo.App. 223, 236 S.W.2d 384, 391 (1951): "What is a reasonable use of one's property and whether a particular use is an unreasonable invasion of another's use and enjoyment of his property cannot be determined by exact rules, but must necessarily depend upon the circumstances of each case, such as locality and the character of the surroundings, the nature, utility and social value of the use, the extent and nature of the harm involved, the nature, utility and social value of the use or enjoyment invaded, and the like."

Although no Missouri cases directly in point have been cited or found, at least two other jurisdictions have held that noise created by the operation of air conditioning systems constituted private nuisances subject to abatement by injunction. *Nair v. Thaw*, 156 Conn. 445, 242 A.2d 757 (1968); and *Estancias Dallas Corporation v. Schultz*, 500 S.W.2d 217 (Tex.Civ.App.1973). See generally Annot., 79 A.L.R.3rd 320 (1977)–"Existence of, and relief from, nuisance created by operation of air conditioning or ventilating equipment."

■ When the principles compiled and reiterated in *Kelly v. Boys' Club of St. Louis, supra,* the pertinent factors outlined in *Clinic & Hospital v. McConnell, supra,* and the relevant persuasiveness of *Nair v. Thaw, supra,* and *Estancias Dallas Corporation v. Schultz, supra,* are compositely superimposed upon the evidence presented to the trial court in this case, the untenability of Longs' contention that there was no "substantial proof" that operation of the air conditioning units constituted a nuisance becomes obvious. The trial court, rather than enjoining all use of the air condition-

ing units, sought, and this court believes achieved, a proper balancing of the equities between the parties. Enjoining Longs' use of the air conditioning units during certain fixed nighttime hours cannot be said to have subjected them (or their tenants) to a degree of discomfort unconscionably disproportionate to the disruptive annoyance experienced by the Masseys from the noise emitted by the air conditioning units.

■ The crux of Longs' second point, that there was no evidence to support the damages awarded Masseys, requires a preliminary explanation. Longs stress that there is a difference between the measure of damages for injuries sustained by land due to a permanent nuisance and the measure of damages sustained by land due to a nuisance which is temporary and abatable. As recognized in *Stewart v. City of Marshfield*, 431 S.W.2d 819, 822–23 (Mo.App.1968), the proper measure of damages for injuries sustained by land due to a permanent nuisance is the difference between the value of the land before and after the existence or creation of the nuisance. On the other hand, as recognized in *Spain v. City of Cape Girardeau*, 484 S.W.2d 498, 505 (Mo.App. 1972), the proper measure of damages for injuries sustained by land due to a nuisance which is temporary and abatable is not the land's diminution in value but the depreciation of its rental or useable value during the existence of the nuisance. Longs submit that the latter rather than the former measure of damages is applicable by reason of the temporary and abatable character of the nuisance complained of by the Masseys. Building from that premise, Longs argue that the only evidence of compensable damages presented by Masseys was the depreciation in value of their residential property which is totally at war with the measure of damages recognized in *Spain v. City of Cape Girardeau, supra.*

The argument advanced by Longs in support of their second point is factually remiss in direct proportion to the absolute effect they seek to attribute to the cases they cite. The amount of damages awarded by the trial court reflects that Masseys' testimony

as to the depreciated value of their property was not a viable consideration. The nature of the equitable relief granted negates Longs' contention that the trial court considered the depreciated value of the property as an item of damages. In *Schmidt v. Paul*, 554 S.W.2d 496, 499 (Mo.App.1977), a case involving damages occasioned by a temporary nuisance, the following principle contained in *McCracken v. Swift & Co.*, 265 S.W. 91, 92 (Mo.1924), was quoted with approval and held to be applicable: " 'A plaintiff who occupies a home is not limited to the recovery of the diminished rental value of it, but may be compensated for any actual inconvenience and physical discomfort which materially affected the comfortable and healthful enjoyment and occupancy of his home, as well as for any actual injury to his health or property caused by the nuisance.' " In the instant case evidence as to damages, clearly falling within the purview of the principle immediately heretofore enunciated, was presented by the Masseys which amply supported the amount of damages awarded. Admittedly, such damages are not susceptible of exact pecuniary computation and must be left largely to the judgment of the trier of the facts.

■ Longs' third and final point–that the tenants of the apartment complex were "indispensable" parties–is now reached. This matter was first raised by Longs after judgment was entered by way of a motion for new trial. The motion for new trial was overruled and the matter was reasserted by Longs on appeal. There can be no question that the matter was timely raised as Rule 55.27(g)(2), insofar as here pertinent, provides that "a defense of failure to join a party indispensable under Rule 52.04 . . . may be made . . . at the trial on the merits, or on appeal." See *Bunting v. McDonnell Aircraft Corp.*, 522 S.W.2d 161, 168 (Mo. banc 1975). An action may proceed absent joinder of a "necessary" party, but not absent joinder of an "indispensable" party. *Kingsley v. Burack*, 536 S.W.2d 7, 12 (Mo. banc 1976). If one who has not been joined is a "necessary" party as prescribed by Rule 52.04(a), then in accordance with the criteria set forth in Rule 52.04(b), it must be determined whether the action should proceed or be dismissed. As noted in *Kingsley v. Burack, supra*, 536 S.W.2d at 13, "Rule 52.04(b) comes into play after it is determined that the absent person is a necessary party. . . ." Stated somewhat differently in *Bunting v. McDonnell Aircraft Corp., supra*, 522 S.W.2d at 169, "[a]s the rule is written, part (b) is not activated unless a potential party to the suit fits the requirements of part (a)." If one not joined as a party is not a "necessary" party, consideration of whether the action should proceed or be dismissed in their absence in conformity with the criteria set forth in Rule 52.04(b) is unnecessary. *Bunting v. McDonnell Aircraft Corp., supra; Kingsley v. Burack, supra*; and *Morgan v. Wartenbee*, 569 S.W.2d 391, 399 (Mo.App.1978). Although earlier versions of Rule 52.04 tended to emphasize the classification of parties as "necessary" or "indispensable", present Rule 52.04(b) sets forth escalating criteria premised on pragmatic considerations for determining whether an action should proceed or be dismissed absent the presence of one who should have been joined as a party under the criteria of Rule 52.04(a). *Kingsley v. Burack, supra*; and *State ex rel. Emcasco Ins. Co. v. Rush*, 546 S.W.2d 188, 195 (Mo.App.1977).

■ If correctly perceived, the argument tendered by Longs in support of their third and final point runs as follows. Joinder of the tenants as parties was not only feasible but was required by reason of both of the disjunctive criterion set forth in Rule 52.-04(a), namely, "[a] person shall be joined in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest. . . ." Longs finalize their argument that the tenants were "indispensable" parties by stressing two of the escalating criteria set forth in Rule 52.04(b), to wit, "to what extent a judgment rendered in the

person's absence might be prejudicial to him" and "whether a judgment rendered in the person's absence will be adequate." In one salient respect the record on appeal, absent indulging in unbridled speculation, fails to support Longs' argument that their tenants were indispensable parties to the action, while in another salient respect the record on appeal refutes Longs' argument that their tenants were indispensable parties. The vacuous nature of the record as to whether the tenants were occupying the apartment on a month–to–month basis or for fixed terms under written leases, and more particularly whether the tenants' use and enjoyment of air conditioning was a contractual right as opposed to a mere gratuity, simply defies determination of whether the tenants had a protectible interest in the action which might be impaired in their absence. The affirmative allegation contained in Longs' answer that the tenants had no control over the six air–conditioner compressors, without being explained or tempered anywhere in the record, refutes Longs' contention that complete relief could not be afforded to the existing parties absent joinder of the tenants. Due to the status of the record presented on appeal, this court cannot say with conviction or certainty that Longs' tenants were "necessary" parties, much less "indispensable" parties and, accordingly, Longs' third point is rejected.

Judgment affirmed.

All concur.