**Daniel & Donna BROWN, Respondents,**

v.

**CEDAR CREEK ROD & GUN CLUB, Appellant.**

**No. WD 69950.**

Missouri Court of Appeals, Western District.

July 31, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 22, 2009.

Application for Transfer Denied Dec. 22, 2009.

Bruce D. Ryder, Esq., St. Louis and Louis J. Leonatti, Esq., Mexico, MO, for appellant.

Steven J. Gunn, Esq., Tyler R. Breed, Esq., and Stephen M. Ryals, Esq., St. Louis, MO, for respondent.

Before DIVISION THREE: HAROLD L. LOWENSTEIN, Presiding Judge, JOSEPH M. ELLIS and LISA WHITE HARDWICK, Judges.

LISA WHITE HARDWICK, Judge.

This appeal arises from a judgment that awarded Daniel and Donna Brown ("Browns") $700,000 on their nuisance claim and granted injunctive relief against the Cedar Creek Rod & Gun Club ("Club"). The Club seeks to vacate the injunction based on a statutory amendment granting firearm ranges immunity from civil liability for nuisance based on

noise or sound emissions. The Club also appeals the damages award, contending the circuit court erred in: (1) denying a motion for new trial based on prejudicial remarks by the Browns' counsel during closing argument and (2) denying remittitur based on the excessive jury award. For reasons explained herein, we remand the injunction for further consideration and affirm the remainder of the judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

The Browns own and live in their home on two-and-a-half acres of land on St. Charles Road in rural Boone County. Mr. Brown's family has owned the land since the 1940's. Mr. Brown has lived on the land since 1985, and Mrs. Brown has resided with him in the home on St. Charles Road since 1998.

Ralph and Maryann Gates own property located southwest of the Browns' home. In 1992, the Cedar Creek Rod & Gun Club was established on the Gates' property. The Club includes shooting ranges, skeet and trap fields, and clay sporting courses to simulate hunting. The Club has between 125 and 150 members and provides practice ranges for youth groups, five area high schools, and the University of Missouri's shooting teams. It also hosts numerous shooting tournaments and contests.

The Browns' home is approximately 560 yards from the center of the Club's trap and skeet fields. As the Club's membership has grown and activities have intensified over the years, the Browns have found the increasing noise and vibrations from the shooting intolerable. More than 500,000 shots were fired on the fields, ranges, and courses during a single year. The Browns were unable to entertain outside

or play in the yard with their child. While inside the house, they turned up the television or radio volume to drown out the noise from the Club. Mr. Brown described the vibrations from the shots as so strong that it made his chest tremble, and he felt as if "somebody busted [him] right in the chest." Friends and relatives were able to hear gunfire over the telephone when speaking with the Browns. The Browns made many complaints to County officials but were told that nothing could be done.

In January 2004, the Browns filed a petition seeking damages and injunctive relief against the Club for nuisance. Following a three-day trial in December 2007, a jury found in favor of the Browns and ordered the Club to pay $700,000 in damages. The circuit court held a one-day hearing on the claim for injunctive relief. On April 4, 2008, the court entered a permanent injunction limiting the Club's operation to certain days, hours, and types of events.

The Club filed post-trial motions for remittitur and for a new trial. On July 2, 2008, the Club filed an additional motion requesting the circuit court to vacate the permanent injunction based on the passage of House Bill 2034 (H.B. 2034) during the 2008 session of the Missouri General Assembly. H.B.2034 amended Section 537.294, RSMo 2000,[1] by granting the owners and operators of firearm ranges immunity from liability arising out of noise or sound emission from the use of any firearm. The circuit court denied the motion to vacate, noting that the new law had not gone into effect. The court also denied all of the remaining post-trial motions.

The Club appeals the judgment awarding damages and granting injunctive relief.

1. All statutory references are to Revised Statutes of Missouri 2000 and Cumulative Supplement 2008 unless otherwise noted.

The H.B. 2034 amendment to Section 537.294.2 became effective on August 28, 2008. Based on this new law, the Club has filed a Motion to Vacate the Permanent Injunction in this court. The motion was taken with the case and will be addressed as part of the first point on appeal.

## II. ANALYSIS

### A. Injunctive Relief

■ The Club seeks an order vacating the permanent injunction in light of the 2008 amendment to Section 537.294.2, which provides:

All owners and authorized users of firearm ranges shall be immune from any criminal and civil liability arising out of or as a consequence of noise or sound emission resulting from the use of any such firearm range. Owners and users of such firearm ranges shall not be subject to any civil action in tort or subject to any action for public or private nuisance or trespass and no court in this state shall enjoin the use or operation of such firearm ranges on the basis of noise or sound emission resulting from the use of any such firearm range. Any actions by a court in this state to enjoin the use or operation of such firearm ranges and any damages awarded or imposed by a court, or assessed by a jury, in this state against any owner or user of such firearm ranges for nuisance or trespass are null and void.

Prior to the 2008 amendment, Section 537.294.2 provided limited immunity from criminal liability for noise or sound emis-

sions resulting from the "normal use" of a firearm range.[2] H.B. 2034 eliminated the normal use requirement and broadened the immunity to any civil or criminal liability arising from noise or sound emissions at a firearm range. The Club argues that the enactment of this amended law on August 28, 2008, renders the permanent injunction void and unenforceable.[3] Although the law changed after the entry of the injunction, the Club contends the injunction cannot be enforced and must be vacated to the extent that it conflicts with the new law. *Landolt v. Glendale Shooting Club, Inc.,* 18 S.W.3d 101, 105 (Mo. App.2000).

In *Landolt,* a shooting club began operating under restricted hours in 1987 pursuant to an injunction entered in a nuisance action. *Id.* at 103. In 1988, the General Assembly enacted the original version of Section 537.294.2, which granted firearm ranges limited immunity for nuisance actions. Several years later, the shooting club filed a motion to dissolve the injunction based on the new law and modifications that had been made to abate the noise at the firearm range. The trial court denied the motion. Reversing the trial court, the appeals court concluded that an injunction can be modified or vacated when a change occurs in the factual setting or the legal basis for the injunction.

Because a permanent injunction acts *in futuro* and gives Plaintiff no vested right in the judgment of the court, there is no retroactivity bar to applying a new statute after the initial issuance of an injunction. Even if an injunction has ma-

---

**2.** Section 537.294.2, RSMo 2000, defined "normal use" as "the average level of use of the firearm range during the twelve months preceding August 13, 1988."

**3.** The motion to vacate only addresses the permanent injunction and not the damages award. Both parties agree that the recent

amendment to Section 537.294.2 does not provide a basis for reversing or vacating the damages award, because the Browns have acquired a vested property right in the monetary judgment against the Club. *Boyle v. Vista Eyewear, Inc.,* 700 S.W.2d 859, 865–66 n.5 (Mo.App.1985).

tured into a final judgment, when the legislature amends the substantive law on which an injunction is based, the injunction may be enforced only insofar as it conforms to the changed law.

*Id.* at 105 (internal citations omitted). In light of the change in the law, the court remanded the matter "to allow the trial court to consider the effect of Section 537.294 on the standing injunction." *Id.*

Here, the Browns oppose the motion to vacate the injunction and request instead, as in *Landolt,* that the cause be remanded to the circuit court to consider the extent to which the immunities in amended Section 537.294.2, apply in this case. The Browns point out that the amended law does not create blanket immunity for all nuisance activity caused by firearm ranges; rather, it immunizes only those nuisances caused by noise or sound emissions from the use of such ranges. The pleadings in this case alleged nuisance caused by noise emissions *and* "vibrations of the earth" resulting from the discharge of pistols, shotguns, and high-powered weapons at the Club. The evidence at trial also briefly addressed the issue of vibrations, albeit primarily in the context of the sound emissions. Most of the evidence at trial focused on the noise level from the firing range, but the court's judgment does not specifically state that the injunction was based on the nuisance of sound emissions or whether the vibrations also may have been a factor. To the extent that any part of the injunction was designed to abate the vibrations, it is valid and enforceable notwithstanding the broadened immunities in the amended law.

Under these circumstances, we agree that the matter should be remanded to the circuit court to consider the effect of amended Section 537.294.2, on the permanent injunction. The remand will also allow consideration of arguments raised by the Browns concerning constitutional challenges to the amended law and whether the savings statute bars dissolution of the injunction. The circuit court shall conduct such proceedings as necessary to determine whether and to what extent the permanent injunction shall remain in effect.

## B. Damages Award

### 1. Motion for New Trial

 The Club contends the circuit court erred in denying the motion for new trial based on improper closing arguments that prejudicially affected the jury verdict. Counsel for the Browns' made the following statement during closing, which the Club characterizes as an inflammatory "rich man—poor man" argument:

> Think about the record. These people for 15 years have been trying to get somebody to help them, to get some relief. They're just folks. They are not Ralph Gates who owns a mortgage company, who owns hundreds of acres, who is . . .

> [Counsel for the Club]: Your Honor, I object to that.

(At this time a bench conference was held out of the hearing of the jury.)

> [Counsel for the Club]: That is totally improper and I'd ask you to admonish the jury, that that is completely an improper argument on the part of [the Browns'] counsel, and he knows it, to make that argument.

(At this time the Court returned to open proceedings.)

> THE COURT: Jury is instructed as to what is at issue here, is the conduct which occurred at the Rod and Gun Club versus the impact that it has on the Plaintiffs and outside of that area, conduct of other parties not directly related to that is not relevant and should not be considered by the jury.

Ralph Gates was a corporate representative for the Club at trial, but he was not a defendant. The Club contends that by comparing the wealth and status of Mr. Gates with that of the Browns, the Browns' counsel improperly focused the jury's attention on the assets of a non-party rather than the not-for-profit gun club. The Club asserts the argument was prejudicial because it resulted in an excessive jury award of $700,000 in damages.

Whether a new trial should be granted because of jury argument is a determination within the sound discretion of the trial court. *Giddens v. Kansas City S. Ry. Co.*, 937 S.W.2d 300, 309 (Mo.App. 1996). Consequently, we review such trial court rulings for abuse of discretion. *Trimble v. Pracna*, 167 S.W.3d 706, 715 (Mo.banc 2005). A new trial is available only upon a showing that misconduct of the prevailing party incited prejudice in the jury. *Arrington v. Goodrich Quality Theaters, Inc.*, 266 S.W.3d 856, 860 (Mo. App.2008). We must review the record from a " 'standpoint favorable to the trial court's ruling.' " *Id.* (quoting *Underwood v. Brockmeyer*, 318 S.W.2d 192, 194 (Mo. 1958)).

In addressing the motion for new trial, the circuit court concluded the Club was not prejudiced by the closing argument because it originally presented information to the jury about the wealth and status of the Gates family.

Defendants assert that the economic circumstances of the Gates was erroneously permitted to be presented to the jury and that the Court failed to present a sufficient admonition to the jury in closing argument. The Court first notes that Defendant created this issue by selecting Mr. and Mrs. Gates as its representatives at trial. This necessarily required opening the issues of their position in the community beginning

with voir dire. The operative question is whether or not Defendant can show that this "injection" prejudiced their client. Defendants point to the large verdict, comparing it to the economic damages and assert that it must be the result of prejudice. As noted above, because this "wealth" evidence was adduced in the defense of the case and this Court has already found the jury verdict was not inconsistent with Plaintiffs' case, it is difficult to allocate what effect, if any, this evidence or argument had on the verdict. Accordingly, the court cannot say this verdict was the result of bias and/or prejudice.

In general, references to the size, power, status, or wealth of a party are improper when intended to arouse prejudice and are not within the scope of legitimate argument. *Porter v. Toys 'R' Us–Del., Inc.*, 152 S.W.3d 310, 324 (Mo.App. 2004). But here, as in *Porter* and as observed by the circuit court, the facts stated in the argument were already well known to the jury from *voir dire* and the evidence at trial. Evidence of Mr. Gates's business activities and land holdings was adduced by the Club itself during direct examination. The Club opted to select Mr. Gates as a corporate representative and, by doing so, highlighted his close relationship to the Club and his prominent status in the community. We find it unlikely that the brief additional comment, during closing arguments, about Mr. Gates's business and property ownership had any effect on the jury verdict.

Significantly, the circuit court granted the relief initially requested when the Club objected to the closing argument. The Club asked the court to "admonish the jury." As requested, the court instructed the jury to focus on the impact of the Club's conduct on the Browns. The court further stated that the "conduct of other

parties ... is not relevant and should not be considered by the jury." The Club did not object to the admonishment given or request a mistrial until after the jury rendered its verdict. Following the court's admonition, the Browns' counsel made no further comments concerning Mr. Gates's wealth or status. We must assume the jury followed the instructions given by the court. *Cole ex rel. Cole v. Warren County R–III Sch. Dist.*, 23 S.W.3d 756, 759 (Mo. App.2000). Such admonitions can sufficiently remedy any prejudice caused by closing comments related to the financial status of a party. *See Higgins v. Terminal R.R. Ass'n of St. Louis*, 362 Mo. 264, 241 S.W.2d 380, 386 (1951).

The circuit court did not abuse its discretion in denying the motion for new trial because the Club failed to demonstrate any prejudice from the closing argument. We deny the point on appeal.

### 2. *Remittitur*

■ The Club contends the circuit court erred in denying remittitur based on the excessive jury verdict. The Club argues that the $700,000 damage award was not a fair amount of compensation for the Browns' loss and greatly exceeded the verdicts in comparable Missouri nuisance cases involving noise.

■ The jury has primary responsibility for determining damages. *Strong v. Am. Cyanamid Co.*, 261 S.W.3d 493, 521 (Mo.App.2007). However, if the trial court finds the jury verdict is excessive, it has broad discretion to order remittitur. *Id.* Relevant factors in considering whether the verdict is excessive and manifestly unjust include: "the nature and extent of the injuries sustained, diminished earning capacity, economic conditions, plaintiff's age, and a comparison of the compensation awarded in cases of comparable injury." *Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d

226, 250 (Mo.banc 2001). We will not disturb the trial court's decision to grant or deny remittitur absent an abuse of discretion. *King v. Unidynamics Corp.*, 943 S.W.2d 262, 268 (Mo.App.1997). We review the evidence in a light most favorable to the verdict and will disturb the judgment only when the verdict is manifestly unjust. *Strong*, 261 S.W.3d at 521.

■ Upon proof of nuisance, a plaintiff can recover actual damages for any diminished property value and compensatory damages for physical injuries, property damage, inconvenience, and discomfort caused by the nuisance. *Moore v. Weeks*, 85 S.W.3d 709, 716 (Mo.App.2002); *Vermillion v. Pioneer Gun Club*, 918 S.W.2d 827, 831–32 (Mo.App.1996). "In computing compensatory damages, there is no precise formula or bright line test to determine non-economic losses. Each case must be considered on its own facts, with the ultimate test being whether the award fairly and reasonably compensates the plaintiff for the injuries sustained." *Moore*, 85 S.W.3d at 716 (internal citations omitted).

The Browns presented evidence that the decrease in the rental value of their property was approximately $1,100–$1,200 per month during the fourteen-year period of the Club's existence. Based on those figures, the Club argues the jury could have awarded a maximum range of $184,800–$201,000 in actual damages. Thus, the Club asserts the remainder of the $700,000 award was for the Browns' emotional distress and loss of comfort and enjoyment of their property. The Browns did not present evidence of physical injury or property damage.

The Club argues the compensatory damage award is shocking in comparison to the awards in similar cases. In *Racine v. Glendale Shooting Club, Inc.* 755 S.W.2d 369 (Mo.App.1988), the plaintiffs sued a

firing range on adjacent land for noise nuisance occurring over a seven-year period. *Id.* at 371. The trial court awarded $6,000 for physical discomfort, but the court of appeals found the award was excessive because it covered a period beyond the pleadings. *Id.* at 373. In *Massey v. Long*, 608 S.W.2d 547 (Mo.App.1980), the trial court awarded $2,500 in a nuisance action for noise generated by six air conditioning units at an apartment complex adjoining the plaintiffs' property. *Id.* at 548. The units were located about seven feet from plaintiffs' bedroom and disrupted their sleep over a period of two years. *Id.* at 549 On appeal, the $2,500 damage award was affirmed as supported by the evidence. *Id.* at 551. Although the time frames and frequency of the noise in *Racine* and *Massey* were far less than what the Browns endured, the Club asserts these differences do not justify a damage award more than twenty-fold greater than these prior cases.

In this case, the circuit court acknowledged the breathtaking nature of the jury award but ultimately concluded that it fairly compensated the Browns based on the evidence presented at trial:

The Court next takes up the Motion of Remittitur or in the alternative for new trial. The Court has struggled with this issue in an attempt to articulate its findings on this point. Said simply, you just had to be there. There is no question that upon review of the jury's verdict, this Court inhaled deeply and said privately "Wow." However, this "effect upon the Court" was not substantially less than the impression left upon the Court after hearing of Plaintiffs' case in chief. Because the jury could have found the Plaintiffs' witnesses to be credible; the evidence presented was consistent with the areas of damages recoverable under a nuisance theory; and could have disbelieved the witnesses

for the Defendant, the Court cannot say that the jury's assessment of damages was excessive.

The circuit court did not abuse its discretion in making this determination. Testimony at trial established that for fourteen years the Browns were subjected to the noise and vibrations from a barrage of gunfire during the weekdays and weekends, day and night for hours at a time. This resulted in long-term physical discomfort and the loss of enjoyment of their property both inside and outside of the home. In addition to the Browns, ten witnesses testified that the shooting noise from the Club was substantial and significantly interfered with the Browns' use and enjoyment of their home and surrounding acreage.

The circuit court's judgment concluded that "the operation of the Cedar Creek Rod and Gun Club is a nuisance and the magnitude of Plaintiffs' injury is reflected by the award of damages." The court listed several practices of the Club that aggravated and interfered with Browns' use of their land:

a. The number of days each month in which shooting took place;

b. The direction of the shooting, i.e. worse when it was directed toward Plaintiffs' home;

c. The number of shots in any given time period, i.e. the "barrage effect;"

d. The total number of shots that were fired, i.e. over 500,000 shots fired in one calendar year;

e. The unpredictability of what days were and were not shooting days.

f. The hours of the day in which the shooting took place.

The circuit court also made specific credibility findings in favor of the Browns and their witnesses. Conversely, the court

questioned the credibility of witnesses testifying in support of the Club:

> The credibility of the neighbor witnesses testifying for the defense was substantially diminished by their admission of economic or personal relationship with the principals of the gun club and to the extent it was credible is given little weight when the location of their homes and the direction and distance of the shotgun discharge was considered as most lived behind the direction of fire. . . .

> The credibility of the club representatives who testified were substantially diminished by the variations between their testimony at the jury trial and hearing on the permanent injunction.

Despite the Club's comparisons with the damage awards of twenty to thirty years ago in *Racine* and *Massey*, this case must be evaluated on its own unique facts. We must defer to the trial court's superior vantage point and give "great latitude of discretion in determining whether and to what extent the verdict was supported by the evidence." *Gomez v. Constr. Design, Inc.*, 126 S.W.3d 366, 376 (Mo.banc 2004). The court specifically considered the magnitude of the nuisance suffered by the Browns and determined that the $700,000 damage award was fair and reasonable compensation for their loss. The award was supported by substantial evidence and is not manifestly unjust. Accordingly, the court did not abuse its discretion in denying the motion for remittitur. Point denied.

### III. Conclusion

The cause is remanded for further consideration of the permanent injunction consistent with this opinion. In all other respects, the judgment of the circuit court is affirmed.

All Concur.