**John OWENS, et al., Respondents,**

v.

**CONTIGROUP COMPANIES, INC., et al., Appellants.**

**No. WD 72560.**

Missouri Court of Appeals,
Western District.

March 29, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 3, 2011.

Application for Transfer
Denied Aug. 30, 2011.

Jean P. Bradshaw II, Mara H. Cohara, and William G. Beck, Kansas City, MO, for appellants.

Charles F. Speer, Tammy R. Dodson, and Peter B. Bieri, Kansas City, MO; Gerald L. Cross, Jr., Overland Park, KS; Edward D. Robertson, Jr. and Anthony L. DeWitt, Jefferson City, MO, for respondents.

Before Division Three: CYNTHIA L. MARTIN, Presiding Judge, JAMES E. WELSH, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

ContiGroup Companies Inc., Premium Standard Farms, LLC, and KC2 Real Estate, LLC (collectively "PSF"), appeal following a jury trial on claims of temporary nuisance which resulted in a judgment for damages in favor of Respondents. We affirm.

## Factual Background

PSF, operate large scale hog farms in, as pertinent to this appeal, three Missouri counties (Gentry, Daviess, and Grundy counties). The Respondents in this case are fifteen individuals[1] who filed suit against PSF claiming the hog farming operation in Gentry County constituted a temporary nuisance.

As originally filed, the Respondents were part of a larger class of sixty-one plaintiffs who sued PSF on August 5, 2002, in two actions.[2] These actions asserted a temporary nuisance related to the three hog farms operated by PSF in Gentry, Daviess, and Grundy Counties. On March 1, 2007, the Circuit Court granted PSF's motion to sever the plaintiffs' claims in the two actions, and consolidated the individual cases for discovery and trial by household.

On July 8, 2008, the Circuit Court modified its March 1, 2007 Order reconsolidating the individual cases into three groups for trial based on proximity of the plaintiffs to each hog farming operation. Respondents' claims here pertain to PSF's hog farming operation in Gentry County for the years 1999 to 2010.

After a four week trial, the jury returned a verdict in favor of the Respondents. The jury awarded compensatory damages to thirteen of the Respondents in the amount of $825,000 each. In addition, Phyllis Owens received an award of $250,000 and Billie Sue Miller received an award of $75,000. The Circuit Court entered its Amended Judgment on March 22, 2010, which became final following the denial of PSF's post-trial motions on May 24, 2010. PSF now appeals. Further details will be outlined as relevant in the analysis section herein.

## Analysis

In Point One, PSF argues the Circuit Court erred in denying its motion for a directed verdict and for judgment notwithstanding the verdict with respect to all claims arising from Respondents' farms because Respondents failed to make sub-

---

1. We will refer to these individuals collectively as "Respondents," and we will refer to them by name when addressing issues unique to an individual.

2. The two actions were styled *Adwell, et al. v. ContiGroup Companies, Inc., et al.,* Case Nos. 02–CV221554 and 02–221529 (Cir. Ct. Jackson County).

missible cases on the essential element of damages in that Respondents offered no evidence of any economic damages with respect to such business properties. The question presented then, is whether Missouri law allows a plaintiff to recover compensatory damages for the loss of the use or enjoyment of property that is not a residence but rather a "business."

■ This is a purely legal question and, therefore, the standard of review is *de novo. Townsend v. E. Chem. Waste Sys.,* 234 S.W.3d 452, 464 (Mo.App. W.D.2007).

At trial, Respondents proceeded exclusively on the theory that the temporary nuisance was detrimental to the use and enjoyment of their property (both residences and the surrounding farmland). Accordingly, they made no claim and presented no evidence as to any diminution in value of their property as a result of the nuisance created by the hog farm.

■ The measure of damages for a temporary nuisance is the decrease in the property's rental value during the duration of the nuisance and incidents of damage, including, for example, loss of comfort and health. *Peters v. ContiGroup,* 292 S.W.3d 380, 385 (Mo.App. W.D.2009) (citing *Vermillion v. Pioneer Gun Club,* 918 S.W.2d 827, 831–32 (Mo.App. W.D.1996)). Compensatory damages can also be granted for inconvenience and discomfort caused by the nuisance. *Brown v. Cedar Creek Rod & Gun Club,* 298 S.W.3d 14, 21 (Mo.App. W.D.2009) (citing *Moore v. Weeks,* 85 S.W.3d 709, 716 (Mo.App. W.D.2002)). "In computing compensatory damages, there is no precise formula or bright line test to determine non-economic losses. Each case must be considered on its own facts, with the ultimate test being whether the award fairly and reasonably compensates the plaintiff for the injuries sustained." *Brown,* 298 S.W.3d at 21 (citing *Moore,* 85 S.W.3d at 716).

PSF argues a rigid distinction exists between property used as a residence and land used for business purposes. Whereas one can recover damages in temporary nuisance arising out of a deprivation of the use and enjoyment of residential property, PSF argues that the only measure of damages available for a temporary nuisance to business property is the loss of value of that property and/or business during the period of the nuisance.

PSF cites to no Missouri cases that have held that the owner of a business cannot recover for the loss of the use or enjoyment of the property constituting that business. Rather, PSF cites tangential propositions that limit the damages that a *business* can recover for torts. *See e.g.,* RESTATEMENT (SECOND) OF TORTS 561(a) cmt. B (1997). PSF also cites cases from other jurisdictions also limiting the types of harm a business can suffer from a tort. *See e.g., FDIC v. Hulsey,* 22 F.3d 1472, 1489 (10th Cir.1994). However, this authority does not answer the question posed here—whether an *individual* property owner can recover damages for the loss of use and enjoyment of the part of his property used for business purposes.

PSF argues that the Missouri Supreme Court's case *McCracken v. Swift & Co.,* recognized that the owner of a business affected by a nuisance may recover only the decrease in value of the business property. 265 S.W. 91, 91–92 (Mo.1924). However, that was not the holding of *McCracken* and it cannot be read to extend as far as PSF suggests. *McCracken* held that while a business owner can recover the loss of rental value of business property resulting from a temporary nuisance, one can recover as well for the loss of the use and enjoyment of one's residence. *Id.*

Missouri cases consistently refer to plaintiffs being able to recover for the loss

and use of enjoyment of one's "land" or "property." *See e.g., Basham v. City of Cuba,* 257 S.W.3d 650, 653 (Mo.App. S.D. 2008) (quoting *Byrom v. Little Blue Valley Sewer Dist.,* 16 S.W.3d 573, 576 (Mo. banc 2000) ("Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his [or her] property. The focus is defendant's unreasonable interference with the use of and enjoyment of [another's] land")); *Moore v. Weeks,* 85 S.W.3d 709, 716 (Mo.App. W.D. 2002); *Peters v. ContiGroup,* 292 S.W.3d 380, 385 (Mo.App. W.D.2009). While the character of the use of the land would likely have an impact on the proper amount of compensatory damages based on one's expected use of such property, there is no persuasive reason that land used for business purposes could not support an award for the loss of the use and enjoyment of such property by the business owner.

Prior decisions have made it clear, that the basis for a claim for a temporary nuisance is not the fact of ownership of the land in fee simple, but some sort of entitlement to rightful possession of the land and interference with the right to use and enjoy the land. *Hanes v. Cont'l Grain Co.,* 58 S.W.3d 1, 5 (Mo.App. E.D.2001). Some of the land in question is unoccupied farmland. We refuse to say as a matter of law that the owners of farmland are not entitled to the reasonable use and enjoyment of that land merely because business activities are conducted upon it.

Therefore, Respondents did make a submissible case for damages for temporary nuisance with evidence of non-economic injury, which is not contested by PSF.

Points One is denied.

In Point Two, PSF argues the Circuit Court erred in modifying MAI 22.06 to include the term "farm" because it erroneously stated the law by inviting the jury to award an improper measure of damages (non-economic damages) for the farms which are "business" properties.

■ "Whether a jury is properly instructed is a matter of law subject to *de novo* review by this court." *Syn, Inc. v. Beebe,* 200 S.W.3d 122, 128 (Mo.App. W.D. 2006) (citing *Boggs, ex rel. Boggs v. Lay,* 164 S.W.3d 4, 20 (Mo.App.W.D.2005)).

■ As discussed in Point One, the inclusion of the word "farm" in MAI 22.06 did not erroneously state the law because non-economic damages are allowed for business properties. Modification of the MAI instructions is permissible to reflect the particular facts and circumstances of a given case so long as they accurately set forth the substantive law. PSF does not contest that the addition of the word "farm" did not reflect the particular facts and circumstances of each case but only argue that the addition did not accurately set forth the substantive law. *See* MAI, How to Use This Book, p. XLVII (6th ed.2002). As was addressed in Point One, this modification of the MAI did accurately set forth the substantive law.

Accordingly, Point Two is denied.

■ In Point Three, PSF argues the Circuit Court erred in modifying the third paragraph of the verdict director, MAI 22.06, to include the phrase "other emissions" because there was no evidence at trial of other emissions upon which a temporary nuisance verdict could be found.

Whether a jury was properly instructed is a question of law this Court reviews de novo. *Bach v. Winfield–Foley Fire Prot. Dist.,* 257 S.W.3d 605, 608 (Mo. banc 2008). This Court reviews the record in the light most favorable to submission of the instruction. *Id.* Any issue submitted to the jury in an instruction must be supported by substantial evidence "from which the jury could rea-

sonably find such issue." *Kauzlarich v. Atchison, Topeka, & Santa Fe Ry. Co.,* 910 S.W.2d 254, 258 (Mo. banc 1995). "Substantial evidence is evidence which, if true, is probative of the issues and from which the jury can decide the case." *Powderly v. S. County Anesthesia Assocs. Ltd.,* 245 S.W.3d 267, 276 (Mo.App.2008). If the instruction is not supported by substantial evidence, there is instructional error, which warrants reversal "only if the error resulted in prejudice that materially affects the merits of the action." *Bach,* 257 S.W.3d at 608. *Hayes v. Price,* 313 S.W.3d 645, 650 (Mo. banc 2010).

 All the verdict directors in this case contained an alteration to the third paragraph of MAI 22.06 which allowed the jury to find that the nuisance caused by PSF's hog operation was the result of either "ill-smelling odors or other emissions." "Emissions" is not separately defined in the verdict directors. Words in the verdict director that are undefined are given their plain and ordinary meaning. "The dictionary may be used to derive the plain and ordinary meaning of a term." *State ex rel. Proctor v. Messina,* 320 S.W.3d 145, 156 (Mo. banc 2010) (citing *Tendai v. Mo. Bd. of Registration for the Healing Arts,* 161 S.W.3d 358, 366 (Mo. banc 2005) (*overruled on other grounds* )). Black's law dictionary defines the word "emit" as "to give off or discharge into the air" and, therefore, the nounal form, "emission," would be something that is given off or discharged into the air. BLACK'S LAW DICTIONARY (9th ed.2009).

At trial, there was substantial evidence admitted that PSF's hog operations emitted numerous gases and chemicals. Experts from both sides testified to such. For example, Robert Brundage in his video deposition admitted that PSF emits such things as hydrogen sulfide, ammonia. He also agreed that it made sense that "gaseous material, chemical compounds [ . . . ] that create odor, such as hydrogen sulfide and ammonia, can attach themselves to particulate matter, dust particles [ . . . ] and be moved by the wind." These gases and chemicals were only one of the sources of the ill odor that came from PSF's property.

There was also substantial evidence that land application of swine effluent caused an intense odor. Expert Ron Sheffield testified that hog operations, including PSF, seal off lagoons full of hog effluent to prevent the escape of ammonia emissions. He also testified that PSF's land application process was essentially digging up soil and applying the hog effluent in such a way that left a pool of effluent at the top of the soil which "releas[es] odorous compounds up into the air that could potentially go off-site." There was also testimony that the "travelling gun" sprayed pig effluent up into the air about 300 feet and travelled with the wind onto Respondents' land. Further, several Respondents testified that the odor was worse when it rained. The inference from this testimony as to worsening smell at times of precipitation could be interpreted to mean that emissions escaped from PSF's hog operation into the air that were less odorous or non-odorous until it rained. These "emissions" would not be ill odors until acted upon by an outside force. Therefore, the evidence supported the jury's finding that PSF released "other emissions" that interfered with the Respondents' use and enjoyment of their property by becoming an ill odor under certain environmental conditions.

There was substantial testimony that both ill odors from gasses and chemicals released from PSF's hog operation and other emissions (such as hog effluent), which cause ill odors, traveled from PSF's land onto the Respondents' properties.

Each Respondent's property was in close proximity to PSF's extensive hog operations and each testified that he or she experienced great distress as a result of odor coming onto his or her property. Therefore, the modification of MAI 22.06 to include the term "other emissions" was supported by substantial evidence.

Point Three is denied.

 In Point Four, PSF argues the Circuit Court erred in reconsolidating Respondents' individual nuisance cases for trial by proximity to each PSF operation because the evidence before the court supported the original Severance Order but not reconsolidation in that the claims of each Respondent arose from unique factual circumstances and the consolidation of Respondents' claims was likely to and did result in jury confusion and undue prejudice to PSF.

As originally filed, the Respondents were part of a larger class of sixty-one plaintiffs who sued PSF in two actions. The Circuit Court granted PSF's motion to sever the plaintiffs' claims in the two actions, and consolidated the individual cases for discovery and trial by household. The Circuit Court later granted a Motion for Partial Reconsolidation, reconsolidating the individual cases into three groups for trial based on proximity of the Respondents' property to each PSF hog farming operation. Respondents' properties are all in close proximity to PSF's hog farming operation in Gentry County.

 Rule 66.01(b)[3] allows the circuit court to consolidate civil cases for trial if any or all matters in issue involve common questions of law or fact. "The decision whether to consolidate separate proceedings lies in the discretion of the trial court." *In re Adoption of H.M.C.,* 11

S.W.3d 81, 91 (Mo.App. W.D.2000) (citing *McCormick v. McCormick,* 934 S.W.2d 32, 33 (Mo.App. E.D.1996)). "The trial court's decision will stand unless the trial court abused its discretion." *H.M.C.,* 11 S.W.3d at 91 (citing *McCormick,* 934 S.W.2d at 33).

> When reviewing for an "abuse of discretion" we presume the trial court's finding is correct, and reverse only when the ruling is "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion."

*Ziolkowski v. Heartland Reg'l Med. Ctr.,* 317 S.W.3d 212, 216 (Mo.App. W.D.2010) (quoting *Williams v. Trans States Airlines, Inc.,* 281 S.W.3d 854, 872 (Mo.App. E.D.2009)).

In the instant case, all Respondents had the following questions of fact and law in common: (1) the same cause of action; (2) against the same defendant, (3) against the same hog operation in Gentry county; (4) identical claims that the odors from the hog operation were detrimental to the use and enjoyment of their property; and (5) the same time period, 1999 to 2010. Given the overwhelming overlap of the facts of the cases, we cannot say that the circuit court abused its discretion in ordering these cases consolidated. As originally filed, the Respondents consisted of sixty-one individuals in three separate counties filing suit against PSF for three separate hog operations. The Circuit Court's decision to consolidate the cases based on proximity of the Respondents property to

---

**3.** All rule citations are to Missouri Supreme Court Rules (2010), unless otherwise indicated.

each of the hog operations was logical and proper.

PSF argues that the order to consolidate the cases was an abuse of the circuit court's discretion. PSF's cites *State ex rel. Rosen* for the proposition that after a court validly exercises its discretion to issue an order, it cannot immediately thereafter and on the same state of facts proceed to exercise its discretion and nullify the order. *See State ex rel. Rosen v. McLaughlin*, 318 S.W.2d 181, 184–85 (Mo. banc 1958). PSF's reliance on *Rosen* is misplaced. In *Rosen*, the court ordered four separate cases, arising out of the same car accident, consolidated and immediately thereafter in the same order, ordered separate trials for each plaintiff. In the instant case, the circuit court severed the Respondents' claims and later reconsolidated a portion of them based on a rational determination that almost identical claims against a single hog operation were similar enough to warrant a consolidated trial. Such a decision was rational and not arbitrary.

Point Four is denied.

In Point Five, PSF argues the Respondents were judicially estopped from offering the testimony of an expert witness, Dr. Lawrence, that flies traveled from PSF's hog operation to Respondents' properties and that PSF's operation posed a risk of adverse health consequences for Respondents because Respondents had previously represented to the court that their nuisance claims did not include fly, health, or medical components when they argued successfully for reconsolidation of the actions.

"The trial court has broad discretion to admit or exclude evidence," and "[w]e will affirm the trial court's decision absent a clear abuse of discretion." *Wiley v. Homfeld*, 307 S.W.3d 145, 152 (Mo.App. W.D.2009) (quoting *Campbell v. Tenet Healthsystem, DI, Inc.*, 224 S.W.3d 632, 638 (Mo.App. E.D.2007)). "This standard gives the trial court 'broad leeway in choosing to admit evidence,' and its exercise of discretion will not be disturbed unless it 'is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration.'" *Mitchell v. Kardesch*, 313 S.W.3d 667, 675 (Mo. banc 2010) (quoting *State v. Freeman*, 269 S.W.3d 422, 426–27 (Mo. banc 2008)).

Judicial estoppel "in its basic form, applies to prevent litigants from taking a position in one judicial proceeding, thereby obtaining benefits from that position in that instance and later, in a second proceeding, taking a contrary position in order to obtain benefits from such a contrary position at that time." *Shockley v. Dir., Div. of Child Support Enforcement*, 980 S.W.2d 173, 175 (Mo.App. E.D.1998) (quoting *Jensen v. Jensen*, 877 S.W.2d 131, 135 (Mo.App. E.D.1994)). PSF argues that this court should use the principle of judicial estoppel to prevent the plaintiffs from benefitting from making a representation to the trial judge prior to trial and later taking a contradictory position at trial in front of the very same trial judge. We refuse to do so.

Judicial estoppel in Missouri is a principle that has been utilized primarily to prevent litigants from deriving a benefit by taking contradictory positions at different judicial *proceedings*. In *Shockley*, the Division of Child Enforcement ("Division") treated a judgment as a court order when it attempted to increase the father's child support obligations. 980 S.W.2d at 175. At a subsequent proceeding the following year in an attempt to again increase the father's child support obligations, the Division attempted to argue that no prior court order existed regarding the father's child support obligations. *Id.* at 174. The Eastern District held, *inter alia*, that the

Division was judicially estopped from taking a contradictory position in the subsequent proceeding. Critically, although addressing the same subject matter, there were two separate and independent proceedings. *See also Vorhof v. Vorhof,* 532 S.W.2d 830, 831 (Mo.App.1975) (holding a wife could not in one action argue that an alimony award was contractual and in a subsequent action take the position that the award was decretal). Judicial estoppel has also been utilized to prevent a party from taking contrary positions in front of the trial court and then before an appellate court. *See e.g., State v. Dillon,* 41 S.W.3d 479, 485–86 (Mo.App. E.D.2000).

PSF's citation to Missouri cases in which it claims that judicial estoppel should apply in the same action before the same trial judge are unpersuasive. In *Jefferies v. Jeffries,* 840 S.W.2d 291 (Mo.App. E.D. 1992), husband and wife were granted a dissolution of marriage whereby they signed a separation and property settlement agreement. *Id.* at 292. In that agreement, father acknowledged paternity of two children. *Id.* After the decree was entered, father filed a Rule 74.06(b) motion seeking relief from portions of the decree relating to one of the children. *Id.* In that case, the Eastern District held the father was judicially estopped from attacking the validity of the judgment because the principle is "designed to preserve the dignity of the courts and insure order in judicial proceedings." *Id.* at 294 (quoting *Edwards v. Durham,* 346 S.W.2d 90, 101 (Mo. 1961)). Although ostensibly a motion within the same case, a Rule 74.06 motion is only made after a final judgment has been entered and abolished certain writs that a party could utilize to attack a final judgment. This does not persuade us that the principle of judicial estoppel should apply here.

■■■■ The trial judge is granted great discretion on the admission of evidence. *Wiley,* 307 S.W.3d at 152. "[T]he court can change its ruling [on the admission of evidence] anytime during the trial if presented with proper circumstances." *Id.* It seems to us judicial estoppel is in essence utilized to prevent a party from taking contradictory positions in situations where the party has actually received some sort of *outcome* or resolution (whether it be beneficial or merely decided on the merits in a prior proceeding). Where, as in the case at bar, there has been no outcome but rather a single case in process, judicial estoppel should not be used to hamstring the judge's discretion. If the trial court believes that a party has misled the court, the trial court has various sanctions at its disposal. We do not find that the trial court abused its discretion in this case by allowing the evidence to be submitted to the jury.

Point Five is denied.

■■■■ In Point Six, PSF argues the Circuit Court erred in not setting aside the verdicts and ordering a new trial because the awards of compensatory damages were grossly excessive and were caused by passion and prejudice of the jury resulting from errors by the trial court in that the court improperly consolidated Respondents' claims, admitted improper evidence, and gave erroneous instructions to the jury.

■■■■ The jury awarded damages of $825,000 each to thirteen of the fifteen Respondents, $250,000 to Phyllis Owens, and $75,000 to Billie Sue Miller, for a total verdict of $11,050,000.00.

The assessment of damages is primarily a function of the jury. *Emery v. Wal–Mart Stores, Inc.,* 976 S.W.2d 439, 448 (Mo. banc 1998). A trial court has great discretion in approving a verdict or setting it aside as excessive. [*Letz v. Turbomeca Engine Corp.,* 975 S.W.2d

155, 174 (Mo.App. W.D.1997)]. An appellate court, therefore, "will interfere only when the verdict is so grossly excessive that it shocks the conscience of the court and convinces the court that both the jury and the trial court abused their discretion." *Id.* (quoting *Fust v. Francois,* 913 S.W.2d 38, 49 (Mo.App. E.D.1995)).

*Armon v. Griggs,* 60 S.W.3d 37, 40 (Mo. App. W.D.2001). In addition, the defendant must also establish in fact that trial misconduct or error by the prevailing party caused bias or prejudice that resulted in a glaringly unwarranted and excessive verdict. *Id.* (citing *Elfrink v. Burlington N. R.R. Co.,* 845 S.W.2d 607, 614 (Mo.App. E.D.1992)).

The alleged errors cited by PSF have already been discussed and rejected herein. PSF claims (1) the Circuit Court improperly reconsolidated Respondents' claims for trial; (2) the Circuit Court permitted Respondents to introduce the testimony of Dr. Lawrence despite the fact that Respondents were judicially estopped from making the types of nuisance claims to which his testimony was relevant; (3) the Circuit Court altered the relevant MAI instruction to permit Respondents to recover noneconomic damages for properties on which they should have been limited to economic damages; and (4) included in the verdict directors for all Respondents, a basis to recover for "other emissions" that was not supported by the evidence. As each of these claims have already been discussed and rejected, PSF can point to no trial error upon which to base their claim of bias or prejudice of the jury that resulted in an excessive verdict. *See Giddens v. Kansas City Southern Ry. Co.,* 29 S.W.3d 813, 822 (Mo. banc 2000) ("The errors specifically alleged have not been found to be meritorious; therefore, they cannot serve as a predicate for a finding of excessiveness of the verdict.")

■■■ PSF also fails to meet the showing under the second prong of the excessiveness test that the verdict is so grossly excessive as to shock the conscience. While there is no precise formula, Missouri courts look to the following factors to determine whether a jury verdict for compensatory damages is excessive:

(1) loss of income, both present and future; (2) medical expenses; (3) plaintiff's age; (4) the nature and extent of plaintiff's injuries; (5) economic considerations; (6) awards approved in comparable cases; and (7) the superior opportunity for the jury and the trial court to evaluate plaintiff's injuries and other damage.

*McCormack v. Capital Elec. Const. Co.,* 159 S.W.3d 387, 395 (Mo.App. W.D.2004) (citing *Messina v. Prather,* 42 S.W.3d 753, 760–761 (Mo.App. W.D.2001)).

■■■ PSF focuses a large amount of its attention in its argument on the property value of the homes and farms in question compared to the awards received by the Respondents. PSF states in its brief that "[a]ny award significantly exceeding the total value of the property is far more than necessary to compensate a plaintiff for the temporary impairment in the use of that property and is grossly excessive." PSF, however, cites no authority to support this proposition. This was not a permanent nuisance case. "A nuisance is temporary if it may be abated, and it is permanent if abatement is impracticable or impossible." *Peters v. ContiGroup,* 292 S.W.3d 380, 385 (Mo.App. W.D.2009) (quoting *Hanes v. Cont'l Grain Co.,* 58 S.W.3d 1, 3 (Mo.App. E.D.2001)). Here, the use of the land on which the hog operation is located is subject to change and the smell emanating therefrom is the result of the manner in which the land is used and not an inherent quality of the property itself. *See Hanes,* 58 S.W.3d at 3. This was a

temporary nuisance case. The measure for damages for a *permanent* nuisance is the "difference in the land's market value immediately before and immediately after the injury." *Bruns v. Green,* 157 S.W.3d 368 (Mo.App. E.D.2005). An action for temporary nuisance includes, as was asserted in this case, non-economic damages, including inconvenience, discomfort and loss of quality of life. *See e.g., Brown v. Cedar Creek Rod & Gun Club,* 298 S.W.3d 14, 21 (Mo.App. W.D.2009); *Peters,* 292 S.W.3d at 385 (Mo.App. W.D.2009). There is no authority for the proposition that a damage award is excessive if damages for the loss of the use and enjoyment of property exceed the actual market value of that property. Further, our legislature has recognized that there is an inherent additional value in a homestead that exceeds the fair market value of the property. *See* section 523.001.[4] PSF attempts to argue that the Respondents chose to allege a temporary nuisance to gain advantage in the allowable damages. As is pointed out above, Respondents could not have established a permanent nuisance under the facts of this case and the only avenue available to them was through an action for temporary nuisance.

Finally, while PSF on appeal argues that the verdict is excessive, at trial they failed to even address the issue of damages in argument to the jury. The Respondents argued damages in closing argument to the jury and asked for 2.8 million dollars per household. PSF chose to argue that the odor emanating from the hog operation did not substantially impair the Respondents' use and enjoyment of their property. The jury found that the odor did, in fact, substantially impair the Respondents' use and enjoyment of their properties and determined that each

household should receive damages. While it may be a perfectly valid trial strategy to argue the issue of liability solely and not address damages to the jury, we reject PSF's attempt now to litigate for the first time what they failed to do at trial.

Point Six is denied.

## Conclusion

For the reasons set forth herein, the judgment of the trial court is hereby affirmed.

All concur.

---

4. All statutory references are to RSMo 2000, as updated through the 2010 cumulative supplement, unless otherwise indicated.